## A98A1892. GRAHAM v. THE STATE.
### (512 SE2d 921)

McMURRAY, Presiding Judge.

Defendant was charged in an indictment with aggravated assault, theft by receiving stolen property (motor vehicle), theft by receiving stolen property, namely, a motor vehicle license plate and tag, possession of a firearm by a convicted felon, criminal trespass, and the discharge of a firearm on the property of another. The evidence adduced at his jury trial, viewed in the light most favorable to the jury's verdicts, revealed the following:

On March 9, 1997, Kathy K. Rider of Henderson, North Carolina, reported her car stolen. The vehicle was a black 1994 Mazda 626, with a North Carolina tag. She had not given anyone permission to borrow the car, and she still had the key on her key ring. Reba Gail Waycaster told Hall County Sheriff's Deputy Donna Nipper Welch she thought it was defendant who, on March 12, 1997, drove up to Waycaster's residence in a dark-colored car, playing the radio too loud, and revving the motor. She described the vehicle as a small, four-door, "black car with a busted windshield and . . . no hubcaps." Defendant appeared intoxicated, and suddenly he became verbally abusive. Waycaster thought she heard "a firearm being discharged while he was on [her] property. . . . She [only saw] something black laying on the car [but later] found a pellet gun in the ditch that looked like the gun [she] thought [she] had seen." Although Waycaster's recollection at trial was weak and contradictory on the identification of defendant as the perpetrator, Deputy Welch confirmed it was Waycaster who gave the deputy defendant's name; that Waycaster "was standing at the doorway" of her residence; and that Waycaster stated she "saw it herself," as opposed to relying on the statements of her husband.

Patrol Officer Morris W. Kelly of the Hall County Sheriff's Department responded as a backup officer to Deputy Welch's initial response to the report of a discharged firearm at the Waycaster residence. Shortly after hearing this description of the vehicle, Officer Kelly left the Waycaster residence. Within a five-mile radius, he passed a black, four-door smaller vehicle and "noticed that the windshield on the passenger side . . . was just shattered, not just cracked or spiderwebbed, the whole passenger side of the vehicle was busted." Officer Kelly turned his vehicle around but was unable to catch that

vehicle. When Officer Kelly began the 6:00 a.m. shift on March 13, he was alerted to the impoundment of a black four-door Mazda 626 fitting the general description of the vehicle he had passed the night before. A check through the National Crime Information Center computer network indicated that "the vehicle had been taken from North Carolina or was registered in North Carolina, but at the time of discovery the vehicle had a tag on it from Alabama." Upon inspection of the vehicle, Officer Kelly noted "that the air bags . . . were blown out[;] that the windshield on the right-hand side . . . [was entirely] busted [and] that it was missing all four hubcaps." Inside the vehicle, Officer Kelly discovered "a black leather wallet" on the floorboard, containing "several personal items of identification," such as defendant's State-issued Georgia ID card, his social security card, and defendant's Georgia hunting and fishing license. Officer Kelly photographed the impounded vehicle, and Waycaster "identified the vehicle in the photographs as the vehicle that was at her residence the previous day and driven by [defendant]."

On the afternoon of March 13, 1997, Derrick Baldwin backed his diesel truck up to some public telephones to make a call. Defendant was already at one telephone. As Baldwin tried to make his call, defendant "was [belligerently] complaining of [Baldwin's] noisy diesel truck and the backup signal. . . . [Defendant] said, 'You know, that [d—] truck is pretty loud, I can't even hear over here on this phone.' . . . [Baldwin] was blunt [in reply] and [he] said [to defendant,] 'Well, it's not running now so get over it.' . . . [Baldwin] continued to try and talk with [his] party [but] was interrupted again for the same reason by [defendant, who said,] 'Don't you have any (mouths the word ["f—ing"]) courtesy for anyone over here?'" This second objection was raised despite the fact that Baldwin's truck "had been off, . . . since [he] got out and used the telephone." After this second comment, Baldwin "hung the phone up and went over there and got in his [defendant's face] and told him to get over it. . . . [Defendant then] said, 'Well, you're just a damn bully, I'll blow your GD head off.' . . . [Defendant] just kind of turned away and proceeded towards a white Ford truck. . . . And then out of the corner of [his] eye [Baldwin] noticed [defendant] shuffling around in the front seat of the truck . . . [a]nd [then] coming out of the truck with . . . a Smith & Wesson, at least a .38 caliber . . . double action revolver." When Baldwin realized defendant was "coming out with a pistol, [Baldwin] got over behind [his] truck and picked up a pipe fitting, an elbow, and told [defendant] to put the gun down." When another car came into the parking lot, Baldwin got behind this vehicle, "jumped up on the porch of the Country Cupboard and went in and called the police. . . . [Defendant] got in his truck and [drove] away headed south on Price Road." Baldwin described defendant and his truck to

Deputy Welch and identified State's Exhibit P-5 (a photograph) as "the person [he] saw that day with the gun."

The jury acquitted defendant of theft by receiving the stolen license tag and criminal trespass but found him guilty of aggravated assault, theft by receiving stolen property (motor vehicle), and discharge of a firearm on the property of another. Once the jury returned its verdicts, defendant entered a guilty plea to possession of a firearm by a convicted felon. This direct appeal followed. *Held*:

1. Defendant first complains of the overruling of his motion for directed verdict as to the aggravated assault charge, arguing the evidence of identity is insufficient.

On appeal from a criminal conviction the evidence must be construed in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence. An appellate court does not weigh the evidence or judge the credibility of the witnesses but only determines whether the evidence to convict is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560). *Hawkins v. State*, 230 Ga. App. 627, 629 (3) (497 SE2d 386). Conflicts in the testimony of the witnesses, including the State's witnesses, are a matter of credibility for the jury to resolve. So long as there is some competent evidence, even though contradicted, to support each element of the State's case, the jury's verdict will be upheld. *Howard v. State*, 227 Ga. App. 5, 8 (6) (a) (488 SE2d 489).

"The testimony of a single witness is generally sufficient to establish a fact." OCGA § 24-4-8. In the case sub judice, Baldwin's in-court identification of defendant as the assailant was sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307, supra, to authorize the jury's verdict that defendant committed aggravated assault with a handgun, a deadly weapon, as alleged in the indictment. OCGA § 16-5-21 (a) (2); *Ringo v. State*, 236 Ga. App. 38 (510 SE2d 893) (1999). See generally *King v. State*, 213 Ga. App. 268, 269 (444 SE2d 381).

2. Next defendant contends the evidence is insufficient to support either of his convictions for receiving stolen property and for discharging a firearm over the property of another.

(a) "A person commits the offense of theft by receiving stolen property when he receives, disposes of, or retains stolen property which he knows or should know was stolen." OCGA § 16-8-7 (a). "Knowledge that goods are stolen is an essential element of the crime of receiving stolen goods, and this knowledge on the part of the accused must be proved, to warrant a conviction under the Penal Code (OCGA § 16-8-7 (a)); but it may be inferred from circumstances, where the circumstances would excite suspicion in the minds of ordinarily prudent persons." (Citations and punctuation omitted.) *Leach-*

*man v. State*, 226 Ga. App. 98, 100 (485 SE2d 587).

"The fact that the car was a stolen car and that the defendant had possession of same is not alone sufficient to authorize a conviction for the offense of theft by knowingly receiving stolen property. *Johnson v. State*, 122 Ga. App. 769 (178 SE2d 772); *Gaskin v. State*, 119 Ga. App. 593, 594 (168 SE2d 183); *Bird v. State*, 72 Ga. App. 843 (4) (35 SE2d 483)." *Heard v. State*, 126 Ga. App. 62, 68 (10) (189 SE 895). But guilty knowledge may be inferred from such possession in conjunction with other evidence. *Abner v. State*, 196 Ga. App. 752-753 (1) (397 SE2d 36). In the case sub judice, Deputy Welch's testimony about Waycaster's prior inconsistent statements was admissible as substantive evidence (see *Hayes v. State*, 268 Ga. 809, 812 (4) (493 SE2d 169)), that defendant possessed Kathy Rider's stolen car within seventy-two hours after the loss was reported and the car at that time had a shattered windshield and was missing all four hubcaps. In addition to the strange appearance of the vehicle, defendant abandoned the car after being spotted by the police, apparently in such haste that he left behind his wallet containing his identification. Someone had attempted to conceal the nature of the property as stolen by substituting an Alabama license plate for Rider's North Carolina tag. The next day, defendant was driving a different vehicle, also with a stolen Alabama tag. This evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307, supra, to authorize the jury's verdict that defendant possessed the motor vehicle under circumstances where he knew or, in the exercise of ordinary prudence, should have known the vehicle was stolen. *Fair v. State*, 198 Ga. App. 437, 438 (4) (401 SE2d 626).

(b) "It shall be unlawful for any person to fire or discharge a firearm on the property of another person, firm, or corporation without having first obtained permission from the owner or lessee of the property." OCGA § 16-11-104 (a). In this case, the evidence was sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307, supra, to authorize the jury's conclusion that it was defendant who fired the pellet gun found on Waycaster's property, without having first obtained permission from either Waycaster or her husband.

3. The third enumeration of error argues defendant's trial was "plagued by the ineffective assistance of counsel" in four specified instances. But for aught that appears of record, defendant never urged this special ground in any motion for new trial, even though new counsel entered in time to file the same. "By proceeding directly with this appeal without pursuing an evidentiary hearing on trial counsel's alleged ineffectiveness, we conclude the issue has been procedurally defaulted and presents nothing for review. *Glover v. State*, 266 Ga. 183 (2) (465 SE2d 659)." *Gantt v. State*, 229 Ga. App. 207, 209 (3) (493 SE2d 608).

4. Defendant next contends his guilty plea to Count 4, possession of a firearm by a convicted felon, was not informed, willing, and voluntary due to allegedly misleading instruction to defendant by the trial court. We quote the verbatim transcript at length:

After the jury returned verdicts finding defendant guilty of aggravated assault, theft by receiving (motor vehicle), and discharging a firearm on the property of another, the following transpired: "[DEFENSE COUNSEL]: I have explained the ramifications to [defendant] and he indicates to me his willingness to enter a plea on the last offense, with the understanding that any sentence on that would be concurrent with ones that he will have on the other offenses. [THE COURT]: And that would be my inclination, that's what I would do. . . . [Addressing defendant,] there's an additional offense that the jury did not try because it's Count Four, possession of a firearm by a convicted felon, charging you [defendant] with that offense in Hall County, Georgia between March 12, 1997 and March 13, 1997. You've been through that criminal charge and discussed that criminal charge with your attorney, . . . is that correct? [DEFENDANT]: Yes, sir. [THE COURT]: And you understand that criminal charge; is that correct? [DEFENDANT]: Yes, sir. [THE COURT]: Do you have any questions you want to now stop and ask [your attorney] about that specific criminal charge before we go forward? [DEFENDANT]: No, sir. [THE COURT]: All right. Then let me ask you as to the possession of a firearm by a convicted felon how you're going to plead, guilty or not guilty? [DEFENDANT]: Guilty. [THE COURT]: I'm going to accept your plea of guilty, . . . and find you guilty of possession of a firearm by a convicted felon. I'm going to find that you've entered your plea of guilty freely, voluntarily and intelligently; would you agree with me on that? [DEFENDANT]: Yes, sir. [THE COURT]: And [defense counsel], after your representation of [defendant] would you agree with that assessment? [DEFENSE COUNSEL]: Absolutely. [THE COURT]: And [defendant], you had the right to have that charge tried by the jury and that jury has just returned a verdict in all other counts and [the court] was prepared to have that jury consider your possession of a firearm by a convicted felon case. . . . [The Court stated it] asked [defense counsel] to talk to you about how you'd like to close that, indicating to [defense counsel] that it would not impact [sic] your sentence, that is a maximum sentence of five years, and [the Court] was of the bent of mind that if [the Court] had the opportunity to sentence you for that offense [the Court] would run that sentence concurrent, that is at the same time, with any other sentences imposed in any of the other counts. That was acceptable to you, is that correct? [DEFENDANT]: Yes, sir. [THE COURT]: All right. And you're not being forced into pleading guilty, is that correct? [DEFENDANT]: Yes, sir. [THE COURT]: All right.

You understand you're not being forced. [DEFENDANT]: Yes, sir."

Whereupon, the State's attorney submitted for the record certified copies of the prior convictions that were the basis for Count 4, possession of a firearm by a convicted felon.

(a) Defendant first argues that the admonitions of the court, as well as those of his appointed counsel affected the sentence and the possibilities of an appeal by failing to "consider the 'impact' . . . that a plea of guilty to a charge to which there had been little evidence adduced at trial would have upon the possible appeal of this case."

To the extent defendant challenges the voluntariness of his guilty plea because the evidence is insufficient, this contention is without merit. Any convicted felon "who receives, possesses, or transports any firearm commits a felony." OCGA § 16-11-131 (b). Defendant's two prior guilty pleas to felony violations as a habitual violator under OCGA § 40-5-58 (c) (2) established his status as a convicted felon. This is a necessary element to prove unlawful possession by a felon. *Belt v. State*, 225 Ga. App. 813, 814 (2) (485 SE2d 39). Even without any admission by defendant, the evidence adduced at trial is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307, supra, to authorize a jury's conclusion that defendant illegally possessed and transported the pellet gun found at the Waycaster residence after defendant's appearance there.

(b) "So long as the substantive requirements of *Boykin v. Alabama*, 395 U. S. 238 (89 SC 1709, 23 LE2d 274) concerning the defendant's guilty plea are met, there is no procedural requirement that the trial judge personally make all the inquiries established by [Uniform Superior Court Rules] 33.7 through 33.9. See *State v. Germany*, 245 Ga. 326, 328 (265 SE2d 13). 'It is presumed that counsel will fulfill the role in the adversary process that the Sixth Amendment envisions, and has rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Strickland v. Washington*, 466 U. S. 668, 688, 690 (104 SC 2052, 80 LE2d 674). Accordingly, when the hearing record affirmatively reflects that a defendant has consulted with trial counsel regarding his guilty plea, and on appeal an ineffective assistance of counsel claim is not timely asserted in regard to the plea, it may be presumed (subject to rebuttal) that counsel has adequately advised (the) client regarding the meaning and effect of the subsequently offered plea. And such consultation constitutes an additional factor which may be considered in determining plea validity. [Cit.]' (Emphasis omitted.) *Scurry v. State*, 194 Ga. App. 165, 166 (390 SE2d 255)." *Brown v. State*, 216 Ga. App. 312, 313-314 (1) (454 SE2d 596). In the case sub judice, defendant's separate enumeration directly raising ineffective assistance of counsel was procedurally defaulted. Nevertheless, once defendant raises a question concerning the validity of a

guilty plea, the State bears the burden of showing that the guilty plea was knowingly, voluntarily, and intelligently entered. *Bowers v. Moore*, 266 Ga. 893, 894-895 (1) (471 SE2d 869).

In our view, this record affirmatively demonstrates the trial court adequately complied with the procedural protections mandated by USCR 33.7, 33.8, and 33.9. Defendant consulted with his attorney, understood the charge against him and the possible sentence, and waived a jury trial (such as he had just undergone) with the attendant right to challenge the documentary evidence against him. He confirmed his guilty plea was not forced or coerced. The trial court confirmed it would make the five-year sentence concurrent with those imposed for the other offenses. There is nothing misleading in that. "An accused, having participated in the court's inquiry into the voluntariness of a guilty plea and having approved ' "in the presence of the court while his attorney entered a plea of guilty in his behalf and the court acting thereon imposed the sentence, (is not permitted) to deny thereafter the authority of his attorney to enter the plea or to deny his approval of such action by his attorney. Had he had any objection, he should have made it known at the time and before the court acted thereon." (Cits.)' " *Paino v. State*, 209 Ga. App. 87, 88 (432 SE2d 599).

*Judgment affirmed. Blackburn and Eldridge, JJ., concur.*

DECIDED FEBRUARY 26, 1999.

*John D. Burroughs, Rex J. McClinton*, for appellant.
*Lydia J. Sartain, District Attorney, J. Philip Milam, Allison B. Goldberg, Assistant District Attorneys*, for appellee.