## A02A2254. ROSE v. THE STATE.
(573 SE2d 465)

JOHNSON, Presiding Judge.

A jury found Richard Rose guilty of taillight violation, theft by receiving stolen property, affixing a license plate with the intention to conceal or misrepresent the identity of a vehicle or its owner, and violation of the Georgia Controlled Substances Act. Rose contends the evidence was insufficient to support the verdict, he received ineffective assistance of counsel at trial, the trial court erred in not giving a jury instruction on similar transactions, and the trial court erred in not giving a proper *Allen*[1] charge. Because each of these enumerations lacks merit, we affirm Rose's convictions.

1. Viewed in a light most favorable to support the jury's verdict, the evidence shows that April Williams loaned her truck to Stacey Tatum, an acquaintance of Rose. Tatum never brought the truck back to Williams. Williams identified state's Exhibit 1 as the tag on the truck she loaned to Tatum. According to Williams, she never gave Rose permission to possess this tag.

---

[1] *Allen v. United States*, 164 U. S. 492 (17 SC 154, 41 LE 528) (1896).

A police officer testified that he observed a Ford Mustang traveling without taillights. When he stopped the Mustang and checked the tag, he discovered the tag and vehicle had been reported stolen. Rose was driving the car, and his co-defendant was in the passenger seat. Both were taken out of the car and handcuffed. Rose told the officer that the car belonged to him and that the tag came off his truck.

As the officer searched for paperwork inside the car, he noticed several bags. One of the bags was located one foot from the driver's seat and behind the passenger's seat. The officer observed a syringe sticking out of the bag's pocket, and a plastic bag with a white powdery substance stuffed in a sunglass case in the pocket. The bag contained methamphetamine, a set of scales, and several syringes.

Rose testified at trial. He informed the jury that in 1988 he was convicted of possession of cocaine, spent three years in jail, and stayed away from drugs because of that experience. Rose further testified that he knew he "had a bad tag" on the Mustang but he put it on the car to "keep the city off . . . a[n] abandon[ed] vehicle." Rose further claimed he purchased the truck from Williams. He stated that he did not put the bags in the car and did not put any drugs in the bags.

In determining sufficiency of the evidence in a criminal case, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[2] An appellate court does not weigh the evidence or judge the credibility of the witnesses, but only determines whether the evidence to convict is sufficient; so long as there is some competent evidence, even though contradicted, to support each element of the state's case, the jury's verdict will be upheld.[3]

In the present case, the jury was authorized to find that Rose was driving a vehicle with a broken taillight, that Rose committed theft by receiving stolen property because he knew the tag was stolen and did not intend to restore the tag to Williams, and that Rose affixed the license plate to his car with the intent to conceal or misrepresent the identity of his car.[4] While Rose argues that he purchased the truck from Williams and that he had a bill of sale, Rose never produced the bill of sale, and Williams testified that she loaned her truck to Tatum and that she did not give Rose permission to possess the tag. The evidence provided ample support for the jury's ver-

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).
[3] *Graham v. State*, 236 Ga. App. 673, 675 (1) (512 SE2d 921) (1999).
[4] Id. at 675 (2) (a).

dict that Rose was guilty of theft by receiving stolen property.[5] In addition, despite Rose's arguments to the contrary, the evidence provided ample support that Rose knew the tag did not belong on the Mustang and that he was guilty of affixing a license plate with the intent to conceal or misrepresent the identity of the vehicle or its owner.[6]

The evidence was also sufficient to support the jury's verdict that Rose was guilty beyond a reasonable doubt of a violation of the Georgia Controlled Substances Act. Based on the fact that the officer could see the plastic bag with the syringe where the methamphetamine was found, the jury was authorized to conclude that Rose knew about the drugs.[7] Moreover, Rose admitted that in his prior drug conviction, syringes and drugs were found in a bag inside a car he was driving. The jury was authorized to discount Rose's testimony that he stopped using drugs after his prior conviction.

The two cases cited by Rose are inapposite.[8] In *Haxho*, contraband was found in the defendant's companion's inside coat pocket and billfold. Here, the contraband was in a bag with men's clothing, one foot away from Rose. Likewise, in *Shirley*, the defendant was a passenger in a car with three others, and the contraband was found in a gym bag belonging to one co-defendant located in front of a seat occupied by another co-defendant. Here, there is more than mere spatial proximity between Rose and the contraband; paraphernalia for contraband, including a syringe and plastic bag, were in plain view. If all occupants of a vehicle had equal access to contraband, they may be found in joint constructive possession.[9] The evidence was sufficient to support the jury's verdict.

2. Rose contends he received ineffective assistance of counsel because his trial counsel (a) brought Rose's previous drug conviction to the jury's attention and then failed to request a similar transaction jury charge, (b) withdrew his request for a jury instruction on equal access, and (c) failed to present the signed bill of sale for Williams' truck.

To prevail on a claim of ineffective assistance of counsel, a defendant must show two things: (1) that counsel's performance was deficient, and (2) that the deficiency prejudiced the defense.[10] The trial judge, who oversaw the trial and heard the evidence presented at the hearing on the motion for new trial, makes the findings on

---

[5] OCGA § 16-8-7 (a); *Ruffin v. State*, 252 Ga. App. 289, 292 (3) (556 SE2d 191) (2001).

[6] OCGA § 40-2-7; *Rogers v. State*, 185 Ga. App. 211, 213 (2) (363 SE2d 846) (1987).

[7] See *Petty v. State*, 221 Ga. App. 125, 126-127 (470 SE2d 517) (1996).

[8] *Haxho v. State*, 186 Ga. App. 393 (367 SE2d 282) (1988); *Shirley v. State*, 166 Ga. App. 456 (304 SE2d 468) (1983).

[9] See *Johnson v. State*, 248 Ga. App. 454, 455 (1) (546 SE2d 562) (2001).

[10] *Fults v. State*, 274 Ga. 82, 83-84 (2) (548 SE2d 315) (2001).

whether the performance was deficient and whether it prejudiced the defendant, findings that this Court does not disturb unless clearly erroneous.[11] In evaluating an attorney's performance, there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.[12]

(a) As for trial counsel's decision to bring Rose's prior drug conviction to the jury's attention, Rose's trial counsel testified that it was his and Rose's strategy to put Rose's character at issue to "beat the State to the punch." In addition, Rose's trial counsel testified that he believed the jurors appreciate candor and forthrightness, so he and Rose decided to tell the jurors about the prior conviction. After the trial court ruled that the state could not introduce the prior drug conviction, Rose's trial counsel asked Rose if Rose was sure he still wanted to introduce the prior conviction with his testimony, and Rose immediately, unequivocally, stated "yes." Rose wanted to "stick with our game plan." Rose wanted the jury to know that the prior conviction changed his life and that he would no longer be around drugs or anybody with drugs.

The trial court did not err in refusing to find that Rose's trial counsel provided ineffective assistance of counsel on this ground. First, the record shows that it was Rose's decision to testify and introduce the prior drug conviction. "A defendant will not be allowed to induce an asserted error, sit silently hoping for acquittal, and obtain a new trial when that tactic fails. Induced error is impermissible and furnishes no ground for reversal."[13] Secondly, even if it was not Rose's decision to introduce his prior conviction, it was a strategic and tactical decision made by Rose's trial counsel. Such decisions provide no valid basis for an ineffective assistance claim.[14] Finally, while Rose enumerates as error trial counsel's failure to request a similar transaction charge, Rose does not support this portion of his enumeration of error with any argument or citation of authority. Therefore, this argument is deemed abandoned.[15]

(b) Rose next contends he received ineffective assistance of counsel because his trial counsel withdrew his request for a jury instruction on equal access. However, Rose's trial counsel explained that he withdrew the equal access charge because the judge indicated she would give the equal access charge only if she gave the presumption of ownership charge. Since Rose was the individual who owned the

---

[11] *Kilpatrick v. State*, 252 Ga. App. 900, 902 (1) (557 SE2d 460) (2001).

[12] *Rucker v. State*, 271 Ga. 426, 427 (520 SE2d 693) (1999).

[13] (Citation and punctuation omitted.) *Brison v. State*, 248 Ga. App. 168, 169 (3) (545 SE2d 345) (2001).

[14] See *Mobley v. State*, 271 Ga. 577, 578 (523 SE2d 9) (1999); *Cunningham v. State*, 244 Ga. App. 231, 234 (3) (535 SE2d 262) (2000).

[15] Court of Appeals Rule 27 (c) (2).

car, and since he did not want the jurors to presume any ownership of the contraband or the clothing bag, Rose's trial attorney decided to forgo the equal access charge rather than allow the jury to presume ownership of the things inside the car. It is well established that trial counsel's decisions on matters of tactics and trial strategy, even if unwise, do not amount to ineffective assistance of counsel.[16] The trial court's conclusion that Rose received effective assistance of counsel in this regard is not clearly erroneous.

(c) Regarding his failure to introduce the bill of sale during the trial, Rose's trial counsel testified that the bill of sale did not have Rose's name on it. When Rose's trial attorney told him that he was not going to cross-examine Williams with the bill of sale because it did not have Rose's name on it and would do no good, Rose took the bill of sale away from his attorney and signed his name to it. Rose's attorney further testified that he did not cross-examine Williams about the bill of sale because she was a hostile witness, possibly blaming Rose for stealing her truck. Rose's trial counsel testified that it was his policy not to cross-examine a witness if he could not gain anything on cross-examination. According to trial counsel, he could not refute what Williams was saying, and he saw nothing to be gained from cross-examining her.

Decisions regarding whether and how to conduct cross-examinations and what evidence to introduce are matters of trial strategy and tactics and are within the exclusive province of counsel after consultation with the client.[17] Here, trial counsel explained why he chose not to cross-examine Williams. His decision was a perfectly acceptable trial strategy and provides no evidence that counsel's performance was deficient.[18]

3. Rose contends the trial court erred in not sua sponte giving a jury instruction on similar transaction evidence. However, the record shows that such a charge was not warranted. The state did not present similar transaction evidence either in its main case or during rebuttal. In fact, the trial court specifically granted Rose's motion to exclude evidence of his prior drug conviction. Rather, it was Rose who strategically chose to present such evidence. According to Rose's trial counsel, Rose intentionally chose to present this evidence to the jury because Rose believed the jury would appreciate his forthrightness and because Rose wanted to argue to the jury that because of his past conviction, he would never again associate with drugs. Because the evidence was not presented by the state as similar transaction

---

[16] *Davis v. State*, 245 Ga. App. 402, 408 (3) (538 SE2d 67) (2000).

[17] See *Mack v. State*, 242 Ga. App. 256, 258 (2) (c) (529 SE2d 393) (2000); *Ray v. State*, 253 Ga. App. 626, 627 (2) (560 SE2d 54) (2002).

[18] *Mack*, supra.

evidence, the trial court was not required to give a jury instruction regarding similar transactions.

4. Rose next contends the trial court erred in not giving an *Allen* charge. We disagree. It is within the trial court's discretion whether and when to give the *Allen* charge, and we find no abuse of that discretion in the present case.[19]

The record shows that the jury began deliberations at 10:45 a.m. At their request, the trial judge recharged the jury on possession and conspiracy at 12:10 p.m. Following the recharge, the jury took their lunch break, with instructions to report back to the jury room at 1:30 p.m. At their request, the trial judge recharged the jury on reasonable doubt at 2:45 p.m. The jury returned to the jury room and continued their deliberations at 3:05 p.m. At 3:40 p.m., the trial judge called the jury back to the courtroom because she had received a note saying the jury had reached a verdict. However, when the trial judge reviewed the verdict form, she discovered that the jury had not reached a verdict on one of the counts. After receiving word that the jury was split 9-3 on the last count, the trial judge sent them a note to keep deliberating. Rose agreed with the trial judge's decision not to give an *Allen* charge at this point. The jury began deliberating again at 4:06 p.m. At 5:02 p.m., the jury sent another note to the trial judge asking two questions regarding the drug offense. The trial judge brought the jury back to the courtroom, answered their questions, and then dismissed them for the evening.

The next day, the jury began deliberations at 9:00 a.m. At 11:07 a.m. the trial judge received a note from the jury asking, "how long does a jury have to be deadlocked to be declared deadlocked." The trial judge sent a note asking how the jury was split and received a note from the jury saying they were split 11-1. At this point, the trial judge sent another note to the jury informing them that because of the movement since yesterday, they needed to continue deliberating in good faith. Rose agreed with the trial judge's decision not to give an *Allen* charge at this point. The jury resumed their deliberations at 11:15 a.m. and had a lunch recess from 12:00 p.m. until 1:30 p.m. Subsequently, they reached a verdict at 2:55 p.m. The jury was polled, and each juror agreed with the verdict.

First, Rose never requested the *Allen* charge, and there was no abuse of discretion in the trial court's failure to give an unrequested *Allen* charge in this case.[20] Moreover, considering the fact that the jury heard a one-day drug case with three witnesses, involving two defendants, and four counts ranging from theft by receiving stolen

---

[19] *Honeycutt v. State*, 245 Ga. App. 819, 821 (4) (538 SE2d 870) (2000).
[20] *Ponder v. State*, 268 Ga. 544, 546 (3) (491 SE2d 363) (1997).

property to a violation of the Georgia Controlled Substances Act, and considering the length of time the jury deliberated and the progress made by the jury, we find no abuse in the trial court's decision not to give an *Allen* charge.[21]

*Judgment affirmed. Blackburn, C. J., and Miller, J., concur.*

DECIDED OCTOBER 31, 2002.

*Elaine T. McGruder*, for appellant.
*Robert E. Keller, District Attorney, Erman J. Tanjuatco, Assistant District Attorney*, for appellee.

---

[21] See *Romine v. State,* 256 Ga. 521, 526 (1) (c) (350 SE2d 446) (1986); *Thornton v. State,* 145 Ga. App. 793 (245 SE2d 22) (1978).