## S00A0338. TORRES v. THE STATE.
### (529 SE2d 883)

HUNSTEIN, Justice.

Jorge Ivan Torres was indicted by a Long County grand jury on charges of malice murder, armed robbery, and kidnapping with bodily injury arising out of the death of Mary Ann Prescott. The State filed its notice to seek the death penalty. After venue was transferred to Evans County, Torres was tried, found guilty on all counts, and sentenced to life imprisonment without parole. He appeals from the denial of his motion for new trial.[1] Finding no error, we affirm.

1. The evidence adduced at trial authorized the jury to find that on August 16, 1995, appellant and two other men, Roberto Vaca and David Cordova, went to a Long County convenience store around closing time. The men carried a .22 caliber semi-automatic pistol belonging to Vaca. After Vaca left (in order to obtain a second weapon), the store closed. As the victim, who was a store cashier, was heading towards her parked van, appellant and Cordova forced her into the vehicle, stole her cash and jewelry, ordered the victim out of

---

[1] The crimes occurred August 26, 1995. Torres was indicted in Long County on March 5, 1996. That indictment was quashed and he was re-indicted August 26, 1997 (filed November 24, 1998). The State affirmed its intention to seek the death penalty on September 12, 1997. Torres pled guilty to various Federal offenses; this Court upheld the trial court's decision that Torres had not been placed in double jeopardy in *Torres v. State*, 270 Ga. 79 (508 SE2d 171) (1998). The trial court granted a motion for change of venue in November 1998 and Torres was tried before a jury, found guilty of all charges on February 26, 1999 and sentenced the following day to life without parole on both the murder and kidnapping with bodily injury charges. The trial court sentenced Torres to life imprisonment on the armed robbery charge, provided that the sentences were consecutive to each other and to the Federal sentence Torres was serving, and entered judgment on the jury sentence on March 10, 1999. Torres's motion for new trial, filed March 19, 1999 and amended June 16, 1999, was denied August 26, 1999. A notice of appeal was filed September 17, 1999. The appeal was docketed November 16, 1999 and was submitted for decision on the briefs.

the van, and killed her by shooting her five times in the face and head. Vaca thereafter rejoined the men, who returned the pistol to him. That weapon, sold by Vaca and Cordova's brother the day following the crimes, was recovered by police; expert testimony established that the weapon fired the bullets recovered at the scene of the murder.

After the crimes, appellant, Cordova and Cordova's girl friend drove the van to Miami where the men set it on fire. Appellant was arrested in Florida and in a statement to a GBI agent three days after the crimes, appellant admitted that he, Vaca and Cordova had intended to find a vehicle to steal and that they were armed. Appellant stated that he held the gun and pointed it at the victim but Cordova took the gun from him and used it to kill the victim. Cordova's brother testified that during a telephone conversation, appellant admitted that "he shot this lady . . . so she wouldn't be able to put a finger on him," and that Vaca also confessed that "they had shot this lady."

The evidence was sufficient for a rational trier of fact to find appellant guilty of the crimes for which he was convicted beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. In rebuttal to appellant's defense of mental retardation, the State introduced testimony by a forensic psychiatrist, Dr. Grant,[2] who opined that appellant was not mentally retarded. When asked the basis for his opinion, Dr. Grant stated his first reason was that appellant sold drugs and thus had "to be able to manage [his] cash flow." Upon appellant's objection and motion for mistrial, the trial court found that neither the witness nor the prosecution intentionally injected appellant's character in issue, struck Dr. Grant's testimony, gave a curative instruction to the jury to disregard it, and rebuked the prosecutor in the presence of the jury. Assuming, arguendo, that the admission of this testimony constituted error here, but see *Zant v. Foster*, 261 Ga. 450 (4) (406 SE2d 74) (1991) (evidence which may be highly probative of accused's mental abilities and materially relevant to the question of whether or not he is mentally retarded should be excluded only where its probative value is substantially outweighed by danger of unfair prejudice), we find the trial court's curative actions sufficient under the circumstances to eliminate any prejudicial effect on the jury. The fact that the trial court did not also poll the jury in this case does not demand a different result. Accordingly, we find no

---

[2] In his brief, appellant misidentifies the State's expert witness as Dr. Edwards, the forensic psychologist who testified before Dr. Grant.

error in the denial of appellant's motion for a mistrial.

3. We find no merit in appellant's contention that his conviction must be reversed due to the State's failure to adduce at trial certified copies of documents showing the State's compliance with statutory provisions regarding appellant's extradition from Florida. See generally *Lascelles v. State*, 90 Ga. 347, 362 (1) (16 SE 945) (1892).

4. Appellant contends the grand and petit juries in his case were unconstitutionally composed due to under-representation of blacks, Hispanics and young adults. There is no constitutional guarantee that grand or petit juries, impaneled in a particular case, will constitute a representative cross-section of the entire community. *Larmon v. State*, 256 Ga. 228, 229 (345 SE2d 587) (1986). The proper inquiry concerns the procedures for compiling the jury lists and not the actual composition of the grand or traverse jury in a particular case. *Patterson v. Balkcom*, 245 Ga. 563 (1) (266 SE2d 179) (1980). The Constitution requires only that the State not deliberately and systematically exclude identifiable and distinct groups from jury lists; hence, in order to prevail on a constitutional challenge to the composition of the grand and petit juries in his case, a criminal defendant must establish prima facie that a distinct and identifiable group in the community is substantially under-represented on the jury venire. *Larmon*, supra.

The trial court in this case heard testimony from the county jury commissioners regarding the sources they used to compile the jury lists. Although the expert for appellant criticized the commissioners' reliance upon the 1990 census for its failure to reflect changes in the black and Hispanic populations in the county, in response to the question whether the expert could testify that "there is a representative cross-section of Long County eligible individuals in the jury pool," the witness replied, "I cannot testify that there is not." While the expert then opined that "nobody can testify that there is," the trial court was entitled to credit the contrary testimony of the jury commissioners. Accordingly, we find no error in the trial court's determination that appellant failed to carry his burden of establishing a prima facie case of jury discrimination. See generally *Berry v. State*, 267 Ga. 605 (4) (481 SE2d 203) (1997).

5. We find no abuse of the trial court's broad discretion in changing venue in this case from Long County to Evans County. See OCGA § 17-7-150 (a) (1). Appellant failed to establish a prima facie case that racial discrimination motivated the trial court's decision to change venue to Evans County,[3] see *Gary v. State*, 260 Ga. 38 (5) (389 SE2d

---

[3] Even assuming, arguendo, that the 1.6 percent difference between the counties in the number of persons categorized as "others" could sustain a claim of racial discrimination, the "others" category includes but is not limited to Hispanics and appellant thus failed to estab-

218) (1990); appellant made no showing that the setting of the trial was inherently prejudicial or that the jury selection process was marked by such actual prejudice as to render a fair trial impossible, see *Happoldt v. State*, 267 Ga. 126 (2) (475 SE2d 627) (1996); and the record supports the trial court's finding that the familial relationship between certain Evans County court officials and the victim posed no possibility of prejudice to appellant.

6. Because appellant was found mentally competent and was not sentenced to death, we need not address his contention that a death sentence is not an appropriate penalty for a mentally retarded person. See *Jackson v. State*, 270 Ga. 494 (11) (512 SE2d 241) (1999).

7. The trial court used the verdict form drafted by defense counsel; appellant stipulated to its use. After the jury returned its verdict, appellant's other defense counsel objected to the form. It is well established that induced error is impermissible and furnishes no ground for reversal. *Wynn v. State*, 262 Ga. 839 (2) (426 SE2d 157) (1993). Furthermore, our review of the verdict form reveals that it was not misleading or confusing for any of the reasons assigned it by appellant.

8. The record does not support appellant's contention that the trial court's schedule was unreasonable or prejudiced the defense in any manner.

*Judgment affirmed. All the Justices concur.*

DECIDED MAY 8, 2000.

*Barbara Jo Nelson*, for appellant.

*J. Thomas Durden, Jr., District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Wesley S. Wood, Assistant Attorney General*, for appellee.