### A00A1238. DAVIS v. THE STATE.
(538 SE2d 67)

JOHNSON, Chief Judge.
   In the early morning hours of September 1, 1996, a van driven
by 16-year-old Charles Davis, Jr. left the roadway and collided head-
on with a tree. As a result of the collision, a fire started in the van.
Spilled painting supplies in the back of the van caused the fire to
spread rapidly throughout the vehicle. Davis survived the crash, but
Amanda Farmer and Carrie Clowes, two passengers, died as a result
of injuries they received when the van struck the tree. It was not pos-
sible to remove two other passengers, Davis' sister and Tennyson
Clark, from the van. They died from smoke inhalation and/or burns
from the fire.
   Among other offenses, Davis was charged with four counts of
first degree vehicular homicide. A jury found him guilty of first
degree vehicular homicide by reckless driving in the deaths of
Farmer and Clowes and guilty of second degree vehicular homicide in
the deaths of his sister and Clark. He was also convicted of driving
without a license and driving with a suspended license.
   Davis appeals, claiming that the verdicts are mutually exclusive,
that confidential psychiatric records were erroneously admitted into
evidence at his trial, that the court improperly failed to charge the
jury on proximate cause, and that the state's closing argument was
improper. We find these arguments to be without merit and thus
affirm Davis' convictions.
   1. Davis contends the verdicts finding him guilty of first degree
vehicular homicide in the deaths of Farmer and Clowes are mutually
exclusive of the verdicts finding him guilty of second degree vehicular
homicide in the deaths of his sister and Clark. According to Davis,

---

[13] *Kelly v. State*, 267 Ga. 252, 254 (2) (477 SE2d 110) (1996).

the verdicts are mutually exclusive because by finding second degree vehicular homicide, the jury must have found that he did not drive recklessly, thereby excluding his conviction for first degree vehicular homicide. Although the verdicts may be inconsistent, they are not mutually exclusive.[1]

The statutory definition of second degree vehicular homicide is as follows:

> Any person who causes the death of another person, without an intention to do so, by violating any provision of this title *other than* subsection (a) of Code Section 40-6-163 or subsection (b) of Code Section 40-6-270 or Code Section 40-6-390 or 40-6-391 or subsection (a) of Code Section 40-6-395 commits the offense of homicide by vehicle in the second degree when such violation is *the cause* of said death. . . .[2]

Given this definition, a finding of second degree vehicular homicide does not mandate a conclusion that a driver did not drive in a reckless manner. A jury could believe that although the driver was reckless, that reckless driving did not *cause* the particular death. Instead, a jury might conclude that some other traffic offense caused a particular victim's death.

It is undisputed that Davis' sister and Clark died as a result of the fire, not directly because of the impact. The evidence shows that in all likelihood these two victims would have survived the results of Davis' reckless driving had there been no fire. The verdicts suggest that the jury wanted to find some lesser degree of culpability for these two deaths, and they did this in the only way presented to them: they found that some other traffic offense caused the deaths. In fact, Davis' attorneys argued during the course of the trial that some traffic offense other than reckless driving caused all four of the victims' deaths. While we cannot know the basis for the jury's decision, we cannot say that the verdicts are mutually exclusive because there is sufficient evidence that another traffic offense occurred (such as speeding or failure to maintain lane) and that this offense could have caused the deaths of Davis' sister and Clark.

While the jury's verdicts are not mutually exclusive given the statutory definitions of first and second degree vehicular homicide, the verdicts may be characterized as inconsistent. However, it is well established that this State has abolished the inconsistent verdict

---

[1] See, e.g., *Gutierrez v. State*, 235 Ga. App. 878, 880 (2) (510 SE2d 570) (1999); *Dumas v. State*, 266 Ga. 797 (471 SE2d 508) (1996); *Camsler v. State*, 211 Ga. App. 826 (440 SE2d 681) (1994).

[2] (Emphasis supplied.) OCGA § 40-6-393 (b).

rule.[3] The abolishment of this rule is consistent with the principle that it is not generally within the trial court's power to make inquiries into the jury's deliberations or to speculate about the reasons for any inconsistency between guilty and not guilty verdicts.[4] Moreover, to the extent that these verdicts are inconsistent, the inconsistency inured to Davis' benefit because there was legally sufficient evidence from which the jury could have found him guilty of first degree vehicular homicide as to all four victims. This enumeration of error is without merit.

2. Davis contends the trial court erred in denying his motion for new trial based on the admission into evidence of confidential psychiatric records. These psychiatric records consist of three pages of state's Exhibit 10, which included 199 pages of medical records. The record shows that this was Davis' second trial on these charges. His first trial ended in a mistrial. Both the state and Davis' attorneys believed the exhibit was the same redacted exhibit which had been admitted during the first trial. Davis' attorneys objected to the admission of the exhibit during this second trial on the basis that the exhibit contained hearsay. The trial court gave Davis' attorneys an opportunity to review the exhibit and object to any particular documents which they might want excluded.

The following afternoon, the trial court instructed the parties to review the evidence that was to go to the jury room. One of Davis' attorneys stated: "Here are the medical records we've gone through. I think this needs to be taken out." "This" concerned a reference to Davis' use of marijuana. Davis' attorneys did not object to the three pages of psychiatric records cited in the appellate brief or to the admission of any psychiatric records. It is well settled that if no objection is made in the trial court or if the only objection made is not legally sound, the trial court commits no reversible error in allowing the evidence to be submitted to the jury.[5] By failing to object to these portions of the exhibit after being given an opportunity to review the exhibit, Davis has waived any error as to the admission of the exhibit and the psychiatric records contained therein.[6]

Davis next argues that his trial attorneys were ineffective in failing to object to the admission of the psychiatric records. In order to prevail on his ineffective assistance of counsel claim, Davis has the burden of showing that his trial attorneys' performance fell below a reasonable standard of conduct and that there was a reasonable

---

[3] *Huntley v. State*, 271 Ga. 227, 229-230 (3) (518 SE2d 890) (1999).

[4] See *Mincey v. State*, 237 Ga. App. 463, 464 (1) (515 SE2d 433) (1999).

[5] See *Hunter v. State*, 202 Ga. App. 195, 196 (3) (413 SE2d 526) (1991).

[6] See id.; *Carradine v. State*, 234 Ga. App. 330, 331 (506 SE2d 688) (1998); *Foster v. State*, 226 Ga. App. 334, 335 (1) (486 SE2d 635) (1997).

probability that the outcome of the case would have been different but for the deficient performance of his attorneys.[7] The trial court's finding that Davis was afforded effective assistance of counsel must be upheld unless that finding is clearly erroneous.[8]

In judging his trial attorneys' performance, it is "appropriate to outline generally the circumstances surrounding [Davis'] trial representation."[9] Davis was represented by two experienced trial lawyers in this case and in the previous trial of the same case. In fact, his attorneys' performance in the previous case was so effective that the jury was unable to reach a verdict. At the time of the hearing on Davis' motion for new trial, attorney Darrell Greene had been practicing law since 1963 and had participated in over 500 jury trials, with more than half of these consisting of criminal jury trials. Attorney Marc Cella had been practicing law since 1981 and had tried over 100 criminal jury trials. He had represented 13 individuals in which the state was seeking the death penalty, and only one of those individuals was sentenced to death by the jury. Cella spent approximately 39 hours in court and 102 hours out of court representing Davis. Davis' trial attorneys filed a number of discovery requests, filed requests to charge, requested a charge on lesser included offenses, made a motion for a directed verdict, and filed a motion for arrest of judgment and mistrial. The attorneys also filed an ex parte motion for funds to hire an expert. Throughout the course of the trial, Davis' trial attorneys cross-examined the witnesses, attempted impeachment with their transcripts from the previous trial, and made objections in the case. "Clearly, it cannot be said here that counsel failed to function in any meaningful sense as the government's adversary."[10]

Moreover, the trial attorneys were not ineffective for failing to object to the psychiatric records. While one critical mistake could result in a finding that counsel had been ineffective, here the overall record shows that Davis had two experienced, very competent, and aggressive trial lawyers. Davis' lawyers investigated the case with the assistance of private investigators, they hired and consulted experts, they were well prepared and thoroughly cross-examined the state's witnesses, they presented well-reasoned legal arguments in pretrial hearings and during trial, they presented numerous witnesses of their own, and they had cogent responses to every aspect of the state's case.[11] In *Chapel*, the Supreme Court found that even

---

[7] *Milner v. State*, 271 Ga. 578, 579 (2) (522 SE2d 654) (1999).

[8] *Hassan v. State*, 231 Ga. App. 783, 784 (1) (500 SE2d 644) (1998).

[9] *Cook v. State*, 255 Ga. 565, 578-579 (17) (340 SE2d 843) (1986).

[10] (Citation and punctuation omitted.) Id. at 579.

[11] See *Chapel v. State*, 270 Ga. 151, 158 (9) (510 SE2d 802) (1998); see also *Carter v.*

though trial counsel was deficient in forgetting to present a defense witness who would have supported the theory of defense and impeached a state's witness, the defendant failed to meet the difficult prejudice component of *Strickland v. Washington*[12] that the outcome of the trial would have been different but for trial counsel's deficiency.

In the present case, Davis' trial attorneys acknowledge that Davis' psychiatric records should have been removed from the exhibit containing the medical records. In fact, both attorneys believed that Exhibit 10 was being sent to the jury in the same condition as it went out with the jury in the first trial, with these pages redacted. However, we do not find that the admission of these records unduly prejudiced Davis. Other than the psychiatrist's opinion that Davis was an attention seeker, none of the conclusions in the psychiatric records address the basic issues in the case: whether Davis' violation of a traffic law caused the victims' deaths and, if so, which traffic law Davis violated. The psychiatrist's conclusion regarding Davis' attention-seeking behavior was cumulative of a witness' testimony that Davis would do just about anything to get attention. And Davis' feelings of guilt were consistent with the fact that he acknowledged some degree of culpability for at least two of the deaths; his defense theory was that he should be found guilty of second degree vehicular homicide, rather than first degree, with respect to the deaths of Farmer and Clowes. Contrary to Davis' argument, conclusions regarding guilt about his sister's death do not evidence to the jury that he felt "legally" guilty for her death. We cannot say that but for trial counsel's failure to redact these three pages of psychiatric records, the outcome of the trial would have been different.

Moreover, Davis was represented by Greene, whom he retained.[13] "Whenever a defendant selects his own counsel, that counsel truly represents the defendant and no mistake or error of his, made in good faith and with earnest and honest purpose to serve his client, can be made the basis of a claim of reversible error."[14] The trial court did not err in concluding Davis' trial attorneys rendered effective assistance of counsel.

3. Davis claims the trial court erred in failing to give a charge on proximate cause. The charge in question was requested by the state, and the court declined to give the charge over the state's objection.

---

*State*, 176 Ga. App. 632, 633, n. 1 (337 SE2d 413) (1985).

[12] 466 U. S. 668, 694 (104 SC 2052, 80 LE2d 674) (1984).

[13] Attorney Marc Cella was appointed by the trial court to assist Greene in representing Davis shortly before Davis' first trial due to Greene's health problems at the time. However, both Greene and Cella participated in both trials.

[14] (Citation omitted.) *Scott v. State*, 178 Ga. App. 844 (1) (344 SE2d 764) (1986); *Donaldson v. State*, 180 Ga. App. 879, 880 (3) (350 SE2d 849) (1986).

Davis did not join in the state's request or object to the failure to give the charge. Therefore, he has not preserved this issue for appeal.[15]

Davis also claims the jury should have been charged on independent intervening cause. However, no request for such a charge was made by either party. Thus, this issue was not preserved for appeal.[16]

In an effort to circumvent the waiver issue, Davis argues that his attorneys were ineffective because they failed to request charges on proximate cause and independent intervening cause. As we noted in Division 2, in order to prevail on his ineffective assistance of counsel claim, Davis has the burden of showing that his trial attorneys' performance was deficient and that the deficient performance so prejudiced his defense that a reasonable probability exists that the result of the trial would have been different but for the deficiency.[17]

The record shows that the trial court informed the jury of all the counts against Davis, specifically noting that the counts charged Davis with first degree homicide in that he "did unlawfully, without malice aforethought, cause the death . . . through the violation of certain code sections. . . ." The trial court further charged the jury that no person shall be found guilty of any crime committed by misfortune or accident where there was no criminal scheme, undertaking, or intent. The jury was then charged in the language of OCGA § 40-6-393 (a), including the requirement that the accused "causes the death of another person" by violating any of the three statutes charged in the indictment. The trial court also charged the jury with regard to OCGA § 40-6-393 (b):

> Whoever shall cause the death of another person without any intention to do so by violation of the statute other than the reckless driving and DUI statutes that were read shall be guilty of homicide by vehicle in the second degree when such violation is the cause of said death.

At the end of the charge to the jury, the trial court read from the verdict form, specifically noting once again that homicide by vehicle in the first degree consists of the accused unlawfully, without malice aforethought, causing the death of a victim through the violation of one of the three Code sections charged: reckless driving, driving with an unlawful alcohol level, and driving under the influence of alcohol. In addition, the trial court noted throughout his charge to the jury that the state had to prove each element of the offense beyond a rea-

---

[15] *Rittenhouse v. State*, 272 Ga. 78, 79 (2) (526 SE2d 342) (2000).
[16] Id.
[17] *Hassan*, supra.

sonable doubt. This charge was clearly adequate.[18]

Moreover, Cella testified that regardless of the legal viability of the state's request to charge on proximate cause, he did not want a charge on proximate cause because he believed such a charge can be misinterpreted by a jury to mean less than beyond reasonable doubt. It is well established that trial counsel's decisions on matters of tactics and trial strategy, even if unwise, do not amount to ineffective assistance of counsel.[19] The trial court's conclusion that Davis received effective assistance of counsel in this regard is not clearly erroneous.

As for Davis' argument regarding trial counsel's failure to request a charge on intervening cause, such a charge was not warranted under the facts of this case. The doctrine of intervening cause involves acts of a third party or victim which arguably cause the death of the victim.[20] In the present case, there was no independent intervening cause or actor. Contrary to Davis' contention, the presence of painting supplies in the van does not constitute an intervening cause. The presence of the painting supplies did not cause the deaths. While the supplies accelerated the spread of the fire, they did not cause the fire. But for Davis' actions, the fire would never have started.

4. Davis asserts that it was error for the state to argue in closing that Davis' failure to have a driver's license was, standing alone, sufficient to convict him of reckless driving. While Davis' trial counsel did not object to any of these comments during the state's closing argument, we will address the issue since Davis claims he was denied effective assistance of counsel because his trial counsel failed to object.

At the outset, we note that the prosecutor did not argue that driving without a license, on its own, was sufficient to prove reckless driving. The prosecutor was merely discussing the elements of reckless driving and giving examples of how Davis exhibited reckless disregard for the safety of others. Furthermore, according to trial counsel, Cella briefly thought about objecting but felt that the state's argument was weak and ridiculous and "didn't think that the judge would tell him not to make it." Given the fact that he had a chance to address the argument in his closing, Cella made a strategic decision not to object. Cella's decision not to register his objection, but to

---

[18] See *Mote v. State*, 212 Ga. App. 551, 553 (2) (442 SE2d 799) (1994) (physical precedent only).

[19] *Scott v. State*, 238 Ga. App. 258, 260 (2) (518 SE2d 468) (1999).

[20] See, e.g., *Howard v. McFarland*, 237 Ga. App. 483, 488 (3) (b) (515 SE2d 629) (1999) (physical precedent only); *Harrison v. Jenkins*, 235 Ga. App. 665, 666 (1) (510 SE2d 345) (1998).

address the issue in his closing argument, was a tactical decision that does not amount to a deficient performance.[21]

*Judgment affirmed. Smith, P. J., and Phipps, J., concur.*

DECIDED JULY 28, 2000

*Strongwater & Cherniak, Leeza R. Cherniak, Jennifer R. Kiser*, for appellant.

*Patrick H. Head, District Attorney, Frank R. Cox, Maria B. Golick, Assistant District Attorneys*, for appellee.

---

[21] *Moore v. State*, 242 Ga. App. 249, 252 (1) (b) (529 SE2d 381) (2000); *Richards v. State*, 232 Ga. App. 584, 588-589 (5) (502 SE2d 519) (1998).