## S02A1837. JACKSON v. THE STATE.
(577 SE2d 570)

HUNSTEIN, Justice.

Jerome A. Jackson was indicted on charges of malice murder, felony murder based on aggravated assault, aggravated assault and two counts of involuntary manslaughter (based on reckless conduct

and pointing a weapon) arising out of the shooting death of Princess Thomas. A jury acquitted him of malice murder and found him guilty of the remaining charges.[1] The trial court sentenced him to life imprisonment on the felony murder conviction. Jackson appeals from the denial of his motion for new trial arguing, inter alia, that his convictions for felony murder based upon aggravated assault and involuntary manslaughter based upon reckless conduct are mutually exclusive. We agree and reverse.

1. The jury was authorized to find that Jackson and the victim were involved in a romantic relationship. Jackson and his friend Larry Lovett were invited to the victim's apartment the evening of June 14, 1999. The victim's two cousins were visiting her at that time; both cousins saw Jackson in possession of a handgun he was keeping in his book bag. The victim and Jackson were talking in the kitchen when the cousins stepped out for a few minutes. Upon their return five or ten minutes later, the cousins saw Jackson and Lovett "rushing" from the apartment and found the victim collapsed in the kitchen. Expert testimony established that she had been shot once in the head from a distance of less than two feet. Lovett told the police that he saw Jackson put a .380 caliber handgun to the victim's head and heard him threaten to kill her. The weapon then fired and the two men fled the apartment. Jackson threw the murder weapon into the trash where Lovett retrieved it; it was in his possession when he was arrested by police at a nearby MARTA station shortly after the homicide.

Jackson was arrested several weeks later in Florida. In his statement to the police, Jackson admitted he fired the gun but claimed the shooting was an accident. At trial Lovett repudiated his statement to the police; he testified that Jackson made no threats and that the shooting was an accident.

We find the evidence adduced was sufficient to enable a rational trier of fact to find Jackson guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Jackson challenges his convictions for felony murder and involuntary manslaughter predicated upon reckless conduct, contending that they were mutually exclusive because the verdict reflects the jury may have found that Jackson acted with both criminal intent and criminal negligence in regard to his actions involving

---

[1] The crimes occurred on June 14-15, 1998. A DeKalb County grand jury indicted Jackson on September 14, 1998 and reindicted him on October 21, 1998. He was found guilty on November 5, 1999 and was sentenced November 12, 1999. His motion for new trial, filed November 29, 1999, was denied June 20, 2002. A notice of appeal was filed July 19, 2002. The appeal was docketed August 15, 2002 and was submitted for decision on the briefs.

the victim. The evidence adduced was sufficient to support a verdict based upon either offense. However, rather than instructing the jury not to return a mutually exclusive verdict, the jury here was expressly charged that it could render a verdict of guilty on every count in the indictment.[2]

Verdicts are mutually exclusive "where a guilty verdict on one count logically excludes a finding of guilt on the other. [Cits.]" *United States v. Powell*, 469 U. S. 57, 69 fn. 8 (105 SC 471, 83 LE2d 461) (1984). Accord *Dumas v. State*, 266 Ga. 797, 800 (471 SE2d 508) (1996) (verdicts are mutually exclusive where it is "both legally and logically impossible to convict [the accused] of both counts").[3] Looking at the essential elements for both felony murder and involuntary manslaughter, OCGA §§ 16-5-1 (c), 16-5-3, guilty verdicts on these offenses are not mutually exclusive as a matter of law because felony murder, like involuntary manslaughter, does not require proof of a criminal intent to murder to support a conviction. *Smith v. State*, 267 Ga. 372 (6) (477 SE2d 827) (1996).

That does not end the inquiry, however, because both felony murder and involuntary manslaughter are predicated upon the commission or omission of another offense or act. OCGA §§ 16-5-1 (c), 16-5-3. We agree with Jackson that a mutually exclusive verdict may be rendered in a particular case where the offenses or acts alleged in the indictment as underlying the felony murder and involuntary manslaughter counts reflect that the jury, in order to find the defendant guilty on both counts, necessarily reached "two positive findings of fact that cannot logically mutually exist." *Strong v. State*, 223 Ga. App. 434, 436 (477 SE2d 866) (1996) (Beasley, C. J., dissenting), rev'd in *Kimble v. State*, 236 Ga. App. 391 (1) (512 SE2d 306) (1999). To determine whether this occurred, the alleged underlying offenses or

---

[2] The transcript reflects that the jury submitted the following question: "The prosecution mentioned in the closing that involuntary manslaughter charges and the aggravated assault/felony murder charges are mutually exclusive. Is this true?" After discussing the matter with counsel, the trial court instructed the jury that it could return a guilty verdict on every count if it found the State had proven its case beyond a reasonable doubt as to each count. Compare *Dumas v. State*, 266 Ga. 797, 800 (471 SE2d 508) (1996) (trial court acted correctly by requiring jury to resume deliberations after a mutually exclusive verdict was returned). We reject the State's argument that defense counsel induced the error by arguing, erroneously, that any conflict in the verdict could be corrected at sentencing. Induced error cannot serve to render a void judgment valid.

[3] Mutually exclusive verdicts, which cannot both stand, result in two positive findings of fact which cannot logically mutually exist. Inconsistent verdicts, which do not introduce invalidity, bespeak a positive finding of fact as to one charge and the failure to make a positive finding of fact as to the other. The latter, which results in an acquittal, does not constitute a negative finding of fact but may be explained as compromise, mistake, or lenity. We can neither speculate nor inquire. *Strong v. State*, 223 Ga. App. 434, 436 (477 SE2d 866) (1996) (Beasley, C. J., dissenting). See *Dumas v. State*, supra, 266 Ga. at 799. See also *United States v. Powell*, supra.

acts must be carefully scrutinized.

Case law is clear that convictions for both felony murder and involuntary manslaughter do not exclude each other in those situations where the offenses underlying the convictions can be reconciled by looking to either the legal requirements for each underlying offense or to the unique facts adduced at trial. See, e.g., *Carter v. State*, 269 Ga. 420 (5) (499 SE2d 63) (1998) (where two-year-old victim sustained numerous potentially fatal injuries, felony murder/cruelty to children conviction not mutually exclusive of involuntary manslaughter/simple battery conviction); *Smith v. State*, supra, 267 Ga. at 376 (6) (convictions for felony murder/aggravated assault and involuntary manslaughter/reckless conduct not mutually exclusive where evidence showed defendant intentionally assaulted one victim, while acting recklessly toward another victim); *Robinson v. State*, 254 Ga. App. 842 (1) (563 SE2d 919) (2002) (convictions for aggravated assault and reckless conduct not mutually exclusive because charges involved two different victims); *Davis v. State*, 245 Ga. App. 402 (1) (538 SE2d 67) (2000) (verdicts for both first and second degree vehicular homicide not mutually exclusive where evidence of different traffic offenses underlay each conviction).

In the instant case, Jackson contends his felony murder and involuntary manslaughter guilty verdicts are mutually exclusive because they represent a positive but illogical finding by the jury that he acted with both criminal intent and criminal negligence in shooting the victim.

Felony murder requires the accused to possess the criminal intent to commit the underlying felony. See *Chapman v. State*, 275 Ga. 314 (3) (565 SE2d 442) (2002). Jackson was convicted of felony murder based on an assault, here aggravated into felony status by the use of a deadly weapon. OCGA § 16-5-21 (a) (2). There are two ways to commit an assault: when a person "[a]ttempts to commit a violent injury to the person of another," OCGA § 16-5-20 (a) (1), and when a person "[c]ommits an act which places another in reasonable apprehension of immediately receiving a violent injury." Id. at (a) (2).

"[A]n aggravated assault with a deadly weapon based on OCGA § 16-5-20 (a) (1) cannot be committed by criminal negligence." *Dunagan v. State*, 269 Ga. 590, 591-592 (2) (502 SE2d 726) (1998). Proof of criminal intent is essential for a conviction of an (a) (1) assault. Id.

Reckless conduct, on the other hand, is "an act of criminal negligence, rather than an intentional act, that causes bodily harm or endangers the bodily safety of another." *Lindsey v. State*, 262 Ga. 665, 666 (2) (b) (424 SE2d 616) (1993). It involves "consciously disregarding a substantial and unjustifiable risk that [a person's] act or omission will cause harm or endanger the safety of the other person." OCGA § 16-5-60 (b). Proof of criminal negligence is essential for a

conviction of reckless conduct. *Grant v. State*, 257 Ga. App. 678 (1) (c) (572 SE2d 38) (2002).

Given the different elements of these two offenses, we have held that a verdict of guilty as to aggravated assault based on OCGA § 16-5-20 (a) (1) requires a finding of an intentional infliction of injury, which *precludes* the element of criminal negligence in reckless conduct. *Dunagan*, supra; *Sheats v. State*, 210 Ga. App. 622 (1) (436 SE2d 796) (1993); *Idowu v. State*, 233 Ga. App. 418 (2) (504 SE2d 474) (1998). These cases recognize that the requisite mental states for these two offenses cannot logically and legally co-exist. "Mutual exclusion means that a finding of guilt on the essential elements of one count by definition excludes a finding of guilt based on an essential element of another count." *Gutierrez v. State*, 235 Ga. App. 878, 880 (2) (510 SE2d 570) (1999). A finding of guilt on the essential element of criminal intent for aggravated assault based on OCGA § 16-5-20 (a) (1) thus excludes a finding of guilt based on the essential element of criminal negligence for reckless conduct.[4]

Looking to the facts in this case, we conclude that the jury's verdict finding Jackson guilty of felony murder predicated upon an OCGA § 16-5-20 (a) (1) aggravated assault on Princess Thomas was mutually exclusive of a verdict finding Jackson guilty of involuntary manslaughter predicated upon reckless conduct in regard to the same act involving the same victim at the same instance of time. Accord *Kolokouris v. State*, 271 Ga. 597, 599 (2) (523 SE2d 311) (1999) (mutually exclusive verdict not returned when jury convicted accused only of reckless conduct and he "was not found guilty of any crime based on an intentional criminal act. [Cit.]"). The jury convicted Jackson of killing the victim with criminal intent *and* with criminal negligence, that is, of killing both with and without an intention to do so. "Obviously, the two verdicts were mutually exclusive." *Dumas v. State*, supra, 266 Ga. at 800 (2).[5]

---

[4] While an offense committed by criminal negligence may be a lesser included offense of an offense committed with criminal intent, in that criminal negligence constitutes a less culpable mental state, see OCGA §§ 16-1-6, 16-2-1, a jury may not properly render verdicts of guilt as to both offenses in those factual situations involving the same act by the accused as to the same victim at the same instance of time. See, e.g., *Dumas v. State*, supra, 266 Ga. at 798 (2) (guilty verdicts on murder and vehicular homicide counts are mutually exclusive) and *Foster v. State*, 239 Ga. 302 (236 SE2d 644) (1977) (vehicular homicide lesser included offense of murder).

[5] We recognize that while OCGA § 16-5-20 (a) (1) requires the defendant to act with a criminal intent in regard to the victim, subsection (a) (2) of that statute does not. "There is an intent of the accused that must be shown, but it is only the criminal intent to commit the acts which caused the victim to be reasonably apprehensive of receiving a violent injury, not any underlying intent of the accused in assaulting the victim. [Cit.]" *Dunagan*, supra, 269 Ga. at 594 (2) (b). Thus, a conviction for reckless conduct is not mutually exclusive of a conviction for a subsection (a) (2) assault. See *Huguley v. State*, 242 Ga. App. 645 (1) (a) (529 SE2d 915) (2000). However, subsection (a) (2) cannot be used to reconcile the conflict in

"[W]here there are mutually exclusive convictions, it is insufficient for an appellate court merely to set aside the lesser verdict, because to do so is to speculate about what the jury might have done if properly instructed, and to usurp the functions of both the jury and trial court." (Footnote omitted.) Id. Thus, where, as here, it was both legally and logically impossible to convict Jackson of both felony murder and involuntary manslaughter, we must reverse both mutually exclusive convictions and order a new trial. *Thomas v. State*, 261 Ga. 854 (413 SE2d 196) (1992); *Camsler v. State*, 211 Ga. App. 826 (440 SE2d 681) (1994); see also *Milanovich v. United States*, 365 U. S. 551 (81 SC 728, 5 LE2d 773) (1961). Accord *State v. Freeman*, 272 Ga. 813 (2) (537 SE2d 92) (2000).

3. Because the issue may arise upon retrial, we address Jackson's final enumeration in which he contends that the trial court erred by admitting testimony by the victim's sister regarding a similar transaction. Cintrella Thomas testified that about a month prior to the victim's death, Jackson made sexual overtures toward her and when she argued with him, he retrieved a gun from his book bag, pointed it at her and threatened to shoot her. Focusing upon the similarities between the assault and the victim's death, see *Farley v. State*, 265 Ga. 622 (2) (458 SE2d 643) (1995), we find sufficient connection or similarity between the offense and the crime charged, so that "proof of the former tends to prove the latter." *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991). Accordingly, the trial court did not err by admitting this testimony.

*Judgment reversed. All the Justices concur, except Carley, J., who dissents.*

CARLEY, Justice, dissenting.

A jury found Jackson guilty of felony murder during commission of aggravated assault, as well as involuntary manslaughter based upon reckless conduct. There was only one homicide victim, and the trial court merged the involuntary manslaughter into the felony murder and imposed a life sentence only for that greater offense. Involuntary manslaughter can be a lesser included offense of felony

---

Jackson's verdict. A review of the language of the indictment reveals that it was sufficient to charge Jackson with an assault based on either (a) (1) or (a) (2) in regard to the aggravated assault underlying the felony murder charge. There was sufficient evidence adduced to support a verdict based upon either subsection and the jury was charged accordingly. However, the verdict form returned by the jury did not specify which aggravated assault subsection served as the underlying felony for the felony murder conviction. Thus, we cannot conclusively state that the verdict rested exclusively on the subsection (a) (2) ground so as to eliminate the reasonable probability that the jury might have returned a mutually exclusive verdict by finding Jackson acted with both criminal intent and criminal negligence at the same time as to the same victim. See *Dunagan*, supra.

murder, and acting in a reckless manner can be an included crime in aggravated assault. *Carter v. State*, 269 Ga. 420, 423 (5) (499 SE2d 63) (1998); *Bowers v. State*, 177 Ga. App. 36 (1) (338 SE2d 457) (1985). Jackson does not contend that his reckless handling of the gun was not included in the aggravated assault he committed or that the crime of involuntary manslaughter was not included in the felony murder. He nevertheless urges that merger of the included offenses was erroneous because the verdicts were mutually exclusive, and today a majority of this Court reverses his felony murder conviction on that ground. In my opinion, there is no need to address the merits of Jackson's contention because error, if any, was induced by him. However, even assuming that the principle of induced error is inapplicable, there is no basis for reversal of the felony murder conviction because the verdicts clearly are not mutually exclusive. The trial court's judgment should be affirmed, and I respectfully dissent in its reversal.

According to the majority, the trial court, rather than instructing the jury not to return a repugnant verdict, "expressly charged that it could render a verdict of guilty on every count in the indictment." Majority opinion, p. 410. Thus, the apparent trial court ruling upon which the majority relies to support its reversal of the felony murder conviction is the instruction regarding the form of the verdict. However, Jackson does not enumerate that charge as error. Indeed, the trial court gave it at his request and over the protest of the prosecution. Compare *State v. Freeman*, 272 Ga. 813, 815 (2) (537 SE2d 92) (2000) (State did not object to erroneous charge). Therefore, any error as to the form in which the jury returned its verdicts clearly was induced by Jackson himself. See *Torres v. State*, 272 Ga. 389, 392 (7) (529 SE2d 883) (2000). He insisted that the jurors return a verdict as to all counts without regard to any purported inconsistency in their findings and urged that any conflict should be addressed at sentencing. That is precisely what occurred. The trial court gave the charge that the defense requested and, merging the involuntary manslaughter verdict, sentenced Jackson only for the greater offense of felony murder.

The majority nevertheless concludes that "[i]nduced error cannot serve to render a void judgment valid." Majority opinion, p. 410, fn. 2. However, there is no showing that, under the circumstances of this case, Jackson's conviction for felony murder is void. The only deficiency identified by the majority is in the underlying verdicts, not in the judgment itself. Compare *Bush v. State*, 273 Ga. 861 (548 SE2d 302) (2001) (judgment entered by court without subject matter jurisdiction a mere nullity). Because the crimes were included offenses, the verdicts were not repugnant on their face. Compare *State v. Freeman*, supra (guilty both as party and as accessory after the fact);

*Thomas v. State*, 261 Ga. 854 (413 SE2d 196) (1992) (robbery and theft by receiving); *Camsler v. State*, 211 Ga. App. 826 (440 SE2d 681) (1994) (robbery and theft by receiving). The majority apparently concedes that it is permissible procedure for the jury to return verdicts as to all included offenses, except in the narrow circumstances identified for the first time in today's decision. See Majority opinion, p. 412, fn. 4. Compare *State v. Freeman*, supra at 815 (2) (violation of "long-standing rule" that defendant can never be both a party to a crime and an accessory after the fact). Thus, there was no "void" judgment, and the proper question on appeal is simply whether, having successfully induced the trial court to treat the verdicts in accordance with the *procedural rule* generally applicable to all other included offenses, Jackson should now be estopped to urge otherwise. Compare *Dumas v. State*, 266 Ga. 797, 798 (2) (471 SE2d 508) (1996) (trial court refused on its own motion to accept verdicts finding defendant guilty of intentional and unintentional homicide).

The majority holds that, in those limited instances involving included crimes having a greater and lesser mens rea, "a jury may not properly render verdicts of guilt as to both offenses in those factual situations involving the same act by the accused as to the same victim at the same instance of time. [Cits.]" Majority opinion, p. 412, fn. 4. However, that is exactly the request Jackson made of the trial court in this case. "A party cannot request a ruling from the trial court and then, on appeal, take the contrary position and complain that the ruling was error. [Cits.]" *Heidler v. State*, 273 Ga. 54, 61 (9) (537 SE2d 44) (2000). Thus, by reversing the trial court for complying with the procedure Jackson himself sought, today's holding violates the principle that " ' " '[o]ne cannot complain of a judgment, order, or ruling that his own procedure or conduct procured or aided in causing.' (Cits.)" (Cit.)' [Cit.]" *Payne v. State*, 273 Ga. 317, 319 (5) (540 SE2d 191) (2001).

Even if the majority were correct in determining that the felony murder conviction is "void," its conclusion that Jackson can be retried for that crime would still be erroneous. A new trial is appropriate when the trial court commits reversible error. See OCGA § 5-5-20 et seq. Thus, mutually exclusive verdicts will authorize a new trial in those instances in which the trial court improperly charges the jury. *Dumas v. State*, supra at 800 (2); *Thomas v. State*, 261 Ga. 854, 856 (1) (413 SE2d 196) (1992). As the majority concedes, however, any erroneous instruction in this case was induced by Jackson. Majority opinion, p. 410, fn. 2. Because the erroneous charge was induced, it cannot constitute a basis for a new trial. See *Wilson v. State*, 262 Ga. 588, 590 (2) (b) (422 SE2d 536) (1992). Compare *Dumas v. State*, supra; *Thomas v. State*, supra. Unlike trial error, voidness is based upon a non-amendable defect appearing on the face of the record. See

OCGA § 17-9-61; *State v. Freeman*, supra at 814 (1). Thus, if, as the majority holds, Jackson's conviction for felony murder is "void," then the proper disposition would be to vacate that conviction with direction that the trial court enter judgment on the verdict finding him guilty of the lesser included offense of involuntary manslaughter. See *State v. Freeman*, supra (vacation of conviction and sentence for murder, leaving intact conviction and sentence for lesser offense). See also *Coe v. State*, 274 Ga. 265, 266 (2) (553 SE2d 784) (2001). Either the judgment should be affirmed because any error in the charge was induced, or the felony murder conviction must be vacated because it is void. In no event would Jackson be entitled to a new trial for the offense of felony murder based upon the purported voidness of his conviction for that crime.

With regard to the merits of Jackson's contention, the majority mistakenly asserts that the jury convicted him of "killing both with and without an intention to do so." Majority opinion, p. 412. The jury acquitted him of malice murder, and thus clearly did *not* find that the homicide was intentional. Compare *Dumas v. State*, supra at 800 (2) (guilty of both malice murder and vehicular homicide). It returned guilty verdicts as to felony murder and involuntary manslaughter, and neither of those crimes required proof of his intent to kill. *Holliman v. State*, 257 Ga. 209 (356 SE2d 886) (1987); *Hardrick v. State*, 96 Ga. App. 670 (1) (101 SE2d 99) (1957). The felony murder verdict was based upon commission of aggravated assault, whereas the predicate for the involuntary manslaughter verdict was conduct that constituted a gross deviation from the standard of care a reasonable person would have exercised. As previously noted, Jackson does not contend that his reckless handling of the gun was not included in the aggravated assault he committed. Therefore, the multiple guilty verdicts are not mutually exclusive, but merely "dispose of the State's *alternative allegations* regarding the manner in which [he] *unintentionally caused* the death of the [victim]." (Emphasis supplied.) *Carter v. State*, supra at 423 (5). The jury found that Jackson unintentionally killed the victim during commission of aggravated assault, and it also found that he killed her unintentionally while engaged in reckless conduct. Compare *Dumas v. State*, supra.

Aggravated assault is an intentional act, whereas reckless conduct is an act of criminal negligence. *Dunagan v. State*, 269 Ga. 590, 591 (2) (502 SE2d 726) (1998). According to the majority, "the requisite mental states for these two offenses cannot logically and legally co-exist." Majority opinion, p. 412. I cannot agree with that assertion. OCGA § 16-1-6 (1), (2) specifically provides, in relevant part, that a "lesser included offense" is a crime involving "a less culpable mental state" or "a lesser kind of culpability." That is the reason why reckless conduct is deemed a lesser included crime in aggravated assault.

*Bowers v. State*, supra at 38 (1). In my opinion, where, as here, the evidence authorizes a finding that the defendant's reckless conduct is an *included crime* in an aggravated assault, then verdicts finding him guilty of both of those offenses are not *mutually exclusive*. An included offense cannot be repugnant to the very crime in which it is included.

> [T]here is nothing legally incompatible or legally inconsistent between the mens rea of a reckless disregard for life-threatening consequences and the mens rea of a specific intent to inflict harm. The latter is more blameworthy than the former, but it is not legally inconsistent with the former. To be sure, a specific intent to effect a desired consequence, on the one hand, and a conscious disregard of or callous indifference to the consequence, on the other hand, are mental states that are distinct and apparently contradictory in both a linguistic and psychological sense. They are not, however, incompatible or inconsistent in a legal sense.

*Williams v. State*, 641 A2d 990, 994 (Md. App. 1994). The majority fails to recognize that, when considered in the applicable legal sense,

> the terms "recklessness" and "intent" are not mutually exclusive. . . . [C]onscious disregard of the substantial, unjustifiable risk that fear of immediate bodily harm will be created, does not preclude an intent to create fear or an intent to inflict bodily harm, nor does it preclude intent to point a gun. The term "reckless" refers to the risk created, not the mental intent which resulted in an act which produced fear or injury. [Cit.]

*State v. Cole*, 542 NW2d 43, 51-52 (IV) (Minn. 1996). See also *Commonwealth v. Dobbs*, 682 A2d 388, 390-391 (Pa. Super. 1996); *People v. Noble*, 635 P2d 203, 211 (VI) (Colo. 1981) (the culpability element of recklessness can exist simultaneously with the culpability element of knowledge). To prove that Jackson acted recklessly, the State was not required to negate his intent to commit aggravated assault. He certainly could have intended to inflict injury or cause the victim to be reasonably apprehensive of receiving an immediate violent injury at the same time that he consciously disregarded a substantial risk that harm would result from the manner in which he handled the gun. See *State v. Cole*, supra at 52 (IV). As is true in all other instances of included offenses, the greater proof consisting of his specific intent to commit aggravated assault "does not negate or contradict the lesser proof but only subsumes it." *Williams v. State*, supra at 994.

It is difficult to see how involuntary manslaughter can be included within the offense of murder and yet be logically inconsistent with that offense. For this reason, courts in other jurisdictions have recognized that multiple guilty verdicts for the same conduct that are based on varying levels of mens rea are not mutually exclusive. [Cits.]

*Buehl v. Vaughn,* 166 F3d 163, 180 (II) (H) (3d Cir. 1999). Compare *Kolokouris v. State,* 271 Ga. 597, 598 (2) (523 SE2d 311) (1999) (no multiple guilty verdicts); *Dunagan v. State,* supra (no mutually exclusive verdicts); *Dumas v. State,* supra (no contention that vehicular homicide an included offense in malice murder charge); *Idowu v. State,* 233 Ga. App. 418 (2) (504 SE2d 474) (1998) (not involving multiple guilty verdicts); *Sheats v. State,* 210 Ga. App. 622 (1) (436 SE2d 796) (1993) (no multiple guilty verdicts). Thus, there was no error in this case.

In conclusion, I am constrained to return to the staggering blow which today's opinion delivers to the established concept of induced error. The impact of that holding in the conduct of criminal trials should not be underestimated or discounted by the bench and bar. The only *trial error* which is ever identified by the majority is that, "[a]fter discussing the matter with counsel, the trial court instructed the jury that it could return a guilty verdict on every count if it found the State had proven its case beyond a reasonable doubt as to each count. [Cit.]" Majority opinion, p. 410, fn. 2. Review of the record reveals that what is characterized as a mere discussion is, in fact, a long colloquy wherein Jackson emphatically insisted that the jury be allowed to return a verdict as to all counts and the prosecution vigorously objected. The following is only a portion of defense counsel's argument to the trial court on this issue:

They have to arrive at a verdict on each count. . . . [T]hey can find him guilty of all of those counts. . . . They have to reach a verdict, on those counts. . . . Judge, I'm telling you, they can convict him on all four [counts] . . . but . . . sentencing is another matter. . . . They can . . . [convict him] of all of them. . . . But when it comes down to sentencing, that's a different matter. . . . They can convict on all [counts]. The sentencing is a different thing. . . . But the answer . . . is yes, you can convict him on all [counts]. . . . The question is: Can he be convicted of those counts? . . . . And the answer is: Yes. . . . They have to return a verdict on all counts . . . can he be convicted on Counts 2 and 3, can he also be convicted of Counts 4 and 5? The simple answer is yes.

After considering Jackson's adamant request, the trial court did instruct the jury to return a verdict on all counts and, when guilty verdicts were returned, the court resolved the matter in the context of sentencing. Today, however, a majority of this Court reverses and orders a new trial because the trial court gave the *very instruction* that Jackson insisted upon. The "void judgment" concept advanced as justification for refusing to adhere to the principle of induced error is a complete and utter fiction. The judgment of conviction for felony murder is valid in every respect, since it was entered on guilty verdicts finding the accused guilty of that offense and the lesser crimes that were included in it. I submit that the so-called "void judgment" rationale effectively abolishes the concept of induced error. The simple truth is that, if the induced error rule is not applicable here, it cannot be invoked in any future case. Thus, the trial courts of this state should be apprised that it is no longer possible to avoid reversal when giving a criminal defendant's requested charge, since he or she is now free to attack on appeal the very instructions that were sought below.

DECIDED FEBRUARY 24, 2003 —
RECONSIDERATION DENIED MARCH 28, 2003.

*Christopher E. Latham, Robert J. Storms*, for appellant.
*J. Tom Morgan, District Attorney, Barbara B. Conroy, Robert M. Coker, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Madonna M. Heinemeyer, Assistant Attorney General*, for appellee.