## S09A1903. GUYSE v. THE STATE.
### (690 SE2d 406)

NAHMIAS, Justice.

In 2006, James Nicholas Guyse was convicted at a bench trial of felony murder and other crimes arising out of a drunk driving spree that left one victim dead, another seriously injured, and four others who barely escaped head-on collisions with Guyse. On appeal, Guyse contends that the evidence was insufficient to support his felony murder and five aggravated assault convictions. Guyse admits he committed a crime that resulted in the death of a human being, but he claims the crime was first degree vehicular homicide, not felony murder. As explained below, the evidence was sufficient to enable the trial court to find, beyond a reasonable doubt, that Guyse possessed the intent necessary to commit aggravated assault and felony murder. Accordingly, the trial court did not err in denying his motion for directed verdict of acquittal, and we affirm.[1]

1. The evidence at trial, viewed in the light most favorable to the verdict, showed as follows. On Thursday, October 14, 2004, Guyse's wife picked him up at a friend's house after work around 7:30 p.m. Guyse, a heavy drinker, was already drunk, and his wife could smell alcohol on him. She drove him home, but Guyse left around 10:30 or 11:00 p.m. in his wife's silver 2003 Mitsubishi Galant. Guyse called his wife several times over the next hour or so, sounding even drunker than he did when he left home. The last call was sometime around midnight.

Guyse stopped at the Golden Pantry gas station and convenience store on Mike Padgett Highway and bought two Smirnoff alcoholic beverages. Guyse was so drunk when he left the store that he mistook the store clerk's 1966 Ford Mustang for his wife's 2003

---

[1] Guyse committed his crimes on October 14-15, 2004. A Richmond County grand jury indicted him on November 2, 2004, for malice murder, felony murder, five counts of aggravated assault, DUI, and driving with excessive blood alcohol concentration. Guyse waived a jury trial, and at the conclusion of a bench trial on April 28, 2006, the trial court acquitted Guyse of malice murder but convicted him of the remaining charges. The trial court sentenced Guyse on May 9, 2006, to life in prison for felony murder, 20 years for the most serious aggravated assault, 10 years for each of the other four aggravated assaults, 12 months for DUI, and 12 months for driving with excessive blood alcohol concentration, all to run concurrently. Guyse's May 8, 2006 motion for new trial was denied on May 12, 2009. Guyse filed a timely notice of appeal. The case was docketed in this Court on July 30, 2009, and submitted for decision on the briefs on September 21, 2009.

Mitsubishi Galant. Two customers tried to convince Guyse that he was too drunk to drive, but Guyse insisted that he was fine. They relented only when he agreed to allow one of them to follow him home, but Guyse spun out and sped off onto Mike Padgett Highway just as the man was getting in his car to follow him.

Guyse's first victim, Brian Joseph Daniel, was driving on Mike Padgett Highway that night. Daniel passed two police cars that had pulled a vehicle over on the side of the road. Shortly thereafter, Daniel saw Guyse's Mitsubishi (which he later identified) pass him going the opposite direction towards the two police cars. As Daniel looked in his rearview mirror, he saw Guyse make a u-turn on the four-lane highway and fall in behind him to avoid passing the two police cars. Guyse tailgated Daniel, cut him off several times, and threw a beer bottle at him before deliberately ramming his truck from behind.

The impact knocked Daniel to the far side of the road across three lanes of traffic, where his engine stalled. As Daniel tried to restart the truck, he saw Guyse make a u-turn and speed directly towards him. Fortunately, Daniel was able to restart his vehicle, and he avoided a head-on collision with Guyse only by swerving sharply to the side at the last second. Guyse then made another u-turn and chased Daniel at speeds up to 100 miles per hour. Daniel eventually escaped and drove to his mother's house. During the confrontation, Daniel managed to place two 911 calls. Three other 911 calls came in around the same time about a car forcing people off the road on Mike Padgett Highway.

Deputy Darrell Adams of the Richmond County Sheriff's Office responded to Daniel's 911 calls. On the way to Daniel's mother's house, a report came over the police radio about a car wreck on Mike Padgett Highway involving a small, light-colored vehicle. Deputy Adams did not immediately make the connection between Daniel and the car wreck on Mike Padgett Highway. Once it became clear how close the two incidents were in time and place, Deputy Adams asked Daniel to describe the vehicle that rammed him. Daniel said it was a tan, beige, or golden colored Mitsubishi, and Deputy Adams asked him to go to the crash site to see if the car that had chased him was involved in the wreck. Daniel followed Deputy Adams to the scene of the crash, where he identified the silver 2003 Mitsubishi Galant driven by Guyse as the vehicle that chased him and rammed his truck earlier.

Within minutes of the confrontation with Daniel, Guyse had come across three other vehicles on Mike Padgett Highway that were driving in the opposite direction. Reginald C. Lewis was driving in the far-right lane on his side of the road when he saw Guyse jerk the steering wheel abruptly and cross the median towards him. Lewis

avoided a head-on collision only by swerving off the road in the nick of time. Guyse drove back to the far-right lane on the correct side of the road before again veering sharply into oncoming traffic, barely avoiding a head-on collision with Nancy and Anthony Price's jeep due to quick evasive action by Ms. Price.

Doris Harris, who was behind the Prices in a Honda Accord, was not so lucky. Harris saw Guyse's headlights coming towards her, but before she could get out of the way, Guyse slammed into her car head-on. Ms. Harris suffered severe, permanent injuries. Her 17-year-old daughter, Janay Levy, was killed. Guyse had a blood alcohol concentration of 0.249, over three times the legal limit.

2. Guyse admits that he committed first degree vehicular homicide under OCGA § 40-6-393 (a) by causing the death of another person without malice aforethought through misdemeanor violations of the DUI statute, because that crime only requires proof of intent to do the proscribed acts. See OCGA § 40-6-391 (a) (1) (driving or being in actual physical control of moving vehicle while under influence of alcohol to extent that it is less safe to drive), (5) (driving or being in actual physical control of moving vehicle with blood alcohol concentration of 0.08 grams or more). See also *Cornwell v. State*, 283 Ga. 247, 250 (657 SE2d 195) (2008) (holding that mens rea element of DUI offense is simply intent "to commit the act which is prohibited by statute"). Guyse contends the evidence was insufficient to support a finding beyond a reasonable doubt that he possessed the mental state necessary to commit felony murder and its predicate felony, aggravated assault.

"A person also commits the offense of murder when, in the commission of a felony, he causes the death of another human being irrespective of malice." OCGA § 16-5-1 (c). The main difference between such felony murder and malice murder is that felony murder does not require proof of malice or intent to kill. *Holliman v. State*, 257 Ga. 209, 209 (356 SE2d 886) (1987). Instead, proof of the mens rea necessary to commit the underlying felony supplies the mens rea for the felony murder charge. See *Jackson v. State*, 276 Ga. 408, 411 (577 SE2d 570) (2003). Thus, if the State proved Guyse had the mental state necessary to support a conviction for aggravated assault against Janay Levy, it also satisfied its burden to prove the mens rea element of her felony murder.

Aggravated assault has two elements: (1) commission of a simple assault as defined by OCGA § 16-5-20; and (2) the presence of one of three statutory aggravators. See OCGA § 16-5-21 (a). The statutory aggravators are: (1) intent to rape, rob, or murder; (2) use of a deadly weapon or an offensive weapon likely to or actually resulting in serious bodily injury; and (3) shooting towards people from a vehicle without justification. See OCGA § 16-5-21 (a) (1)-(3).

The State indicted Guyse for aggravated assault based on the second statutory aggravator. Thus, the State undertook to prove that Guyse committed simple assault against his six victims "with an[ ] object . . . which, when used offensively against a person, is likely to or actually does result in serious bodily injury." OCGA § 16-5-21 (a) (2). It is well established that an automobile can constitute an offensive weapon within the meaning of OCGA § 16-5-21 (a) (2), when used to risk or cause a serious bodily injury. See, e.g., *Craft v. State*, 158 Ga. App. 745, 746 (282 SE2d 203) (1981). Unlike the first statutory aggravator — intent to rob, rape, or murder — the second statutory aggravator does not require proof of specific intent. The State need only prove that the defendant possessed a "general intent to injure" with the weapon. *Turner v. State*, 281 Ga. 487, 489 (640 SE2d 25) (2007). There is no doubt that Guyse used his Mitsubishi vehicle as an offensive weapon.

As noted above, a conviction for aggravated assault also requires proof of a simple assault, which can be committed in two ways: (1) by attempting to violently injure someone; and (2) by doing something that places another in reasonable fear that he or she is about to be violently injured. See OCGA § 16-5-20 (a) (1)-(2). Although the second form of simple assault is a general intent crime, meaning the State need only prove that the defendant intended to do the act that placed another in reasonable apprehension of immediate violent injury, the first method is a specific intent crime requiring proof that the defendant intended to violently injure someone. See *Jackson v. State*, 276 Ga. 408, 411-412 & n. 5 (577 SE2d 570) (2003). The State did not specify in the indictment which form of simple assault was being alleged, nor was it required to do so. See *Chase v. State*, 277 Ga. 636, 638 (592 SE2d 656) (2004).

The evidence was sufficient to prove beyond a reasonable doubt both forms of simple assault by Guyse against all six of his victims. Guyse engaged in an extended high-speed car chase with Daniel, deliberately rammed his truck, and attempted to smash into him head-on after his truck stalled. Daniel escaped, but nearby and within minutes, Guyse came upon his other five victims. He swerved sharply into oncoming traffic and nearly hit Lewis head-on. He returned to the far lane on his side of the road before swerving once again into oncoming traffic, nearly hitting the Prices' jeep head-on, and slamming into the Honda Accord behind them. The head-on collision left Harris severely and permanently injured and killed Janay Levy.

The evidence, viewed in the light most favorable to the verdict, was therefore more than sufficient to authorize the trial court to find Guyse guilty beyond a reasonable doubt of the crimes of conviction. *Jackson v. Virginia*, 443 U. S. 307, 318-319 (99 SC 2781, 61 LE2d

560) (1979). Five convictions for aggravated assault and a conviction for felony assault are entirely appropriate under the evidence. Indeed, it would be difficult to imagine a verdict for anything less than *malice* murder on these facts, but for a single point — the fact that Guyse was extremely drunk when he committed his crimes.

Guyse seeks to turn his drunkenness to his advantage, arguing that he was so drunk that he was incapable of forming the intent necessary to commit aggravated assault and felony murder, and that he could thus be convicted of nothing more than first degree vehicular homicide. Under Georgia law, one cannot be convicted of a crime where, due to *involuntary* intoxication, he or she lacks sufficient mental capacity to distinguish between right and wrong in relation to the actus reus. See OCGA § 16-3-4 (a). Involuntary intoxication means intoxication caused by consumption of a substance through excusable ignorance, or the coercion, fraud, artifice, or contrivance of another person. OCGA § 16-3-4 (b) (1)-(2). However, it has long been solidly established that "[v]oluntary intoxication shall not be an excuse for any criminal act or omission," OCGA § 16-3-4 (c), except in the extreme situation where the intoxication "has resulted in the alteration of brain function so as to negate intent," and "[e]ven then, the brain function alteration must be more than temporary," *Horton v. State*, 258 Ga. 489, 491 (371 SE2d 384) (1988). See *Bright v. State*, 265 Ga. 265, 273-274 (455 SE2d 37) (1995) (viable voluntary intoxication defense requires evidence of "permanent brain function alteration"). In this case, there was no evidence of brain damage, temporary or permanent.

As this Court said in 1860 and reiterated in 1988:

> [T]he minimum of mind which can furnish the necessary mental element in crime, is a far smaller quantity than was claimed by the argument for the accused. . . . The law deals with all of these classes of people [i.e., the young, the insane, and the drunken person] as having a sufficient quantum of mind to have bad passions, and evil intentions, and carelessness in their actions, and so to furnish the mental element of crime, but as laboring also under an infirmity of reason, which serves to betray them into these evil intentions and carelessness, and at the same time breaks down this power of resisting temptation. The law comes in then, and excuses the young and the insane, out of tenderness towards an infirmity which is involuntary, and at the same time, to guard against the possibility that men might make the same excuse whenever there is the same infirmity of reason, the law takes special care to exclude drunken men from the excuse, because their infirmity is voluntary. The

result is, that the young and the involuntarily insane occupy a platform of their own, by virtue of an exception made in their favor, while the voluntary insanity of drunkenness being excluded from the exception, stands just as if no exception had been made, and the drunk man and sober man occupy the same great platform of responsibility for the crimes which they commit. . . .

*Foster v. State*, 258 Ga. 736, 744-745 (374 SE2d 188) (1988) (quoting *Jones v. State*, 29 Ga. 594, 607, 609-610 (1860)). Guyse's crimes would have been aggravated assault and felony murder (at least) if he were sober. The fact that he was voluntarily intoxicated does not make them anything less.

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 1, 2010.

*Barbara B. Claridge*, for appellant.

*Ashley Wright, District Attorney, Charles R. Sheppard, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Elizabeth A. Harris, Assistant Attorney General*, for appellee.