In case number CC-05-4898, the appellant, Rufo Ruiz Martinez, was indicted for vehicular homicide pursuant to § 32-5A-192, Ala. Code 1975, for the death of Eria Jeanyne Jackson. In case number CC-05-4899, he was indicted for vehicular homicide pursuant to § 32-5A-192, Ala. Code 1975, for the death of Lisa Cartwright. In case number CC-05-4900, the appellant was indicted for vehicular homicide pursuant to § 32-5A-192, Ala. Code 1975, for the death of Pamela Cartwright. In case number CC-05-4901, he was indicted for vehicular homicide pursuant to § 32-5A-192, Ala. Code 1975, for the death of Samyrin Cartwright. In case number CC-05-4902, the appellant was indicted for first-degree assault pursuant to § 13A-6-20(a)(3), Ala. Code 1975, for injuries sustained by Jaleesa Cartwright. In case numbers CC-05-4898, CC-05-4899, CC-05-4900, and CC-05-4901, the jury found him guilty of the lesser included offenses of criminally negligent homicide, violations of § 13A-6-4, Ala. Code 1975. In case number CC-05-4902, the jury found him guilty of the lesser included offense of second-degree assault pursuant to § 13A-6-21(a)(3), Ala. Code 1975. The trial court sentenced him to serve concurrent terms of twelve months in the Madison County Jail on the criminally negligent homicide convictions. It also ordered him to serve a concurrent term of ten years in prison on the second-degree assault conviction, but split the sentence and ordered him to serve 18 months followed by five years on probation. The appellant filed a post-trial *Page 1145 
"Motion for Judgment of Acquittal," which the trial court denied. This appeal followed.
The parties entered the following "Joint Stipulation of Undisputed Facts":
 "1. On or about May 27, 2005, at approximately 10:00 p.m., a vehicle driven by the Defendant, Rufo Martinez, a twenty-year old Mexican citizen (hereinafter Martinez), was involved in an automobile accident at the intersection of Hummer Road with the access road for state highway 255, or Research Park Drive. A photograph of said intersection is attached as Joint Exhibit `A' Said accident resulted in serious physical injury to Jaleesa Cartwright and the deaths of Eria Jackson, Lisa Cartwright, Pamela Cartwright, and Samyrin Cartwright.
 "2. On or about November 4, 2005, a Madison County Grand Jury indicted Martinez for Reckless with Extreme Indifference Assault in the First Degree, for the injuries to Jaleesa Cartwright and four (4) counts of Vehicular Homicide, for the deaths of Eria Jackson, Lisa Cartwright, Pamela Cartwright, and Samyrin Cartwright. As the Vehicular Homicide statute does not contain a mental state as an element, the Grand Jury chose criminal negligence as Martinez's required mens rea.
 "3. It is undisputed that Martinez's vehicle did not stop at the stop sign at the intersection and struck the victims' vehicle, which caused serious physical injury to Jaleesa Cartwright and caused the deaths of Eria Jackson, Pamela Cartwright, Lisa Cartwright and Samyrin Cartwright.
 "4. It is undisputed that the intersection where the accident occurred was described by several witnesses for both the State and Martinez, including police officers, as a dangerous intersection, and that evidence was presented of identical or very similar accidents at that intersection, including one accident that occurred less than 24 hours after the one involving Martinez. One witness for the State testified that he witnesses people run the stop sign almost on a daily basis.
 "5. It is undisputed that Huntsville Police Officer Tim Wallace testified that he smelled an alcoholic beverage on Martinez's person, and that Martinez answered affirmatively to Wallace's question, `Tomó Usted cerveza?' which is translated into English, as `Did you drink beer?'
 "6. It is undisputed that, approximately one hour after the accident, Officer Wallace took a breath alcohol sample from Martinez and tested it using the Draeger Alco-test machine. The test result reading was .00. See Draeger test certificate, labeled as Joint Exhibit `B.'
 "7. It is undisputed that the State presented evidence through its expert witness, Huntsville Police Investigator Jerry Key, that Martinez's vehicle was traveling a minimum speed of 53 miles per hour in a 45 miles per hour zone and that the Victim's vehicle was traveling at a minimum speed of 47 miles per hour in a 40 miles per hour zone.
 "8. Investigator Key also testified that there were several skid *Page 1146 
marks, including those made by Martinez's vehicle, at the intersection, which indicated to him that many other drivers had slammed on their brakes to avoid running the stop sign.
 "9. It is undisputed that Madison County Coroner Bobby Berryhill testified as to the cause of death and stated that side-impact collisions at speeds of more than 35-40 miles per hour are almost always fatal.
 "10. It is undisputed that the facts cited in paragraphs 3-9 were presented to the jury though admissible evidence at trial which was held April 10-12, 2006. The State was represented by the assistant District Attorney Randy Dill and Martinez was represented by Ronald W. Smith, with the Honorable Bruce E. Williams presiding.
 "11. The jury was instructed on Vehicular Homicide, with the added mental state of criminal negligence, and also on the lesser-included offense of criminally negligent homicide.
 "12. The jury was further instructed on Assault in the First Degree, (Causing serious physical injury to another through Recklessness with Extreme Indifference), Assault in the Second Degree, (Causing serious physical injury, with the use of a dangerous instrument, through Recklessness), Assault in the Third Degree (recklessly causing physical injury to another) and Assault in the Third Degree (causing physical injury to another through criminal negligence and by means of a deadly weapon or dangerous instrument).
 "12. [Sic] On April 13, 2006, the jury acquitted Martinez on (4) counts of vehicular homicide but convicted him on (4) counts of criminally negligent homicide.
 "13. The jury also acquitted Martinez of (Reckless with Extreme Indifference) Assault in the First Degree but convicted him of Reckless Assault in the Second Degree.
 "14, On April 17, 2006, Martinez filed a motion for judgment of acquittal, arguing that the evidence was insufficient, and that the verdicts were inconsistent and mutually exclusive. Said motion was denied on April 28, 2006.
 "15. On May 1, 2006, Martinez filed a motion to reconsider the court's denial of his motion for Judgment of Acquittal, citing this Court's ruling in Hammonds v. State, [Ms. CR-04-1699], which had been decided by the Court of Criminal Appeals on April 28, 2006. This motion was heard on May 18, 2006, which was also the date of sentencing. The trial court denied the motion and pronounced its sentence.
 "16. On June 2, 2006, Martinez filed his notice of appeal."
(Third S.C.R. 1-3.)
The appellant argues that the jury returned inconsistent verdicts in his cases. Specifically, he contends that
 "[t]he verdict for Reckless Assault in the Second Degree was inconsistent with and mutually exclusive of the guilty verdicts of Criminally Negligent Homicide. In finding [him] guilty of criminally negligent homicide, the jury necessarily found that he was unaware of a risk of which he should have been aware, as that is the definition of criminal negligence. To then find [him] guilty of *Page 1147 
reckless assault which requires a finding that [he] was aware of the risk and disregarded it, was clearly inconsistent and the two findings are mutually exclusive."
(Appellant's brief at p. 18.)
In case numbers CC-05-4899, CC-05-4899, CC-05-4900, and CC-05-4901, the appellant was convicted of the lesser included offense of criminally negligent homicide.
 "A person commits the crime of criminally negligent homicide if he causes the death of another person by criminal negligence."
§ 13A-6-4(a), Ala. Code 1975.
 "A person acts with criminal negligence with respect to a result or to a circumstance which is defined by statute as an offense when he fails to perceive a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation. A court or jury may consider statutes or ordinances regulating the defendant's conduct as bearing upon the question of criminal negligence."
§ 13A-2-2(4), Ala. Code 1975 (emphasis added).
 In case number CC-05-4902, the appellant was found guilty of the lesser included offense of second-degree assault pursuant to § 13A-6-21(a)(3), Ala. Code 1975.
 "A person commits the crime of assault in the second degree if the person does any of the following:
 ". . . .
 "(3) He or she recklessly causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument."
§ 13A-6-21(a), Ala. Code 1975.
 "A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk
that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. A person who creates a risk but is unaware thereof solely by reason of voluntary intoxication, as defined in subdivision (e)(2) of Section 13A-3-2, acts recklessly with respect thereto."
§ 13A-2-2(3), Ala. Code 1975 (emphasis added). The Commentary to § 13A-2-2, Ala. Code 1975, discusses the distinction between recklessness and criminal negligence as follows:
 "`Recklessly (subdivision (3)) and `criminal negligence' (subdivision (4)) are more difficult. A common denominator in both is that in each instance the underlying conduct must involve a `substantial and unjustifiable risk' that a result or circumstance described in the penal statute will occur or exists. The reckless offender is aware of the risk and `consciously disregards' it. On the other hand, the criminally negligent offender is not aware of the risk created ('fails to perceive') and, therefore, cannot be guilty of consciously disregarding it. Thus, his culpability, though less than that of the reckless offender, is greater than that required for ordinary tort, or civil, negligence."
In Carter v. State, 843 So.2d 812, 813-15 (Ala. 2002), the Alabama Supreme Court addressed the issue of inconsistent verdicts *Page 1148 
with regard to multiple victims as follows:
 "Triona Carter's case comes before us for the second time following a reversal of her convictions by the Court of Criminal Appeals. Carter v. State, 843 So.2d 807 (Ala.Crim.App. 2001), opinion on remand from the Alabama Supreme Court. The issue now before us is whether, under the doctrine of transferred intent, a defendant can be convicted of an offense as to the unintended victim that is greater than the offense the defendant was convicted of with respect to the intended victim. The Court of Criminal Appeals answered the question in the negative. We reverse and remand.
 "As the Court of Criminal Appeals stated in its opinion on remand from this Court:
 "`The facts are set forth in the previously issued appellate opinions in this case. Of particular relevance here is that Carter, her boyfriend, Trevas Bell, and her good friend, Artimese Johnson, were involved in an altercation with a group composed of Tamiko Smith, Sheri Baker, and Marcus Cephas. Cephas attempted to push Carter, and Bell began fighting with Cephas. As the two men tussled on the ground, Carter hit Cephas, and Cephas knocked Carter to the ground. Carter saw a 9mm pistol on the ground near her, and she picked it up and began firing. . . . Carter shot and killed Cephas and her friend, Artimese Johnson. She also shot and wounded her boyfriend, Bell'
"843 So.2d at 808.
"The State charged Carter with capital murder as to both deceased victims because two or more persons were killed `by one act or pursuant to one scheme or course of conduct,' § 13A-5-40 (a)(10), Ala. Code 1975. The jury was charged on the capital offense, but it was also instructed on the lesser included offenses of intentional murder, provocation manslaughter, and reckless manslaughter. The jury was told to consider the charges separately, and it returned verdicts convicting Carter of intentional murder for the death of Artimese Johnson and provocation manslaughter for the death of Marcus Cephas.
"Carter appealed; the Court of Criminal Appeals reversed the judgment and remanded the case for a new trial on the grounds that the trial court had erroneously refused to charge the jury on self-defense. Carter v. State, 843 So.2d 798
(Ala.Crim.App. 2000). This Court reversed the judgment of the Court of Criminal Appeals and remanded the case, concluding that the evidence indicated that, at the time of the shooting, neither Carter nor her boyfriend was at risk of death or serious bodily injury and that Carter had the ability to retreat, thus negating any claim of self-defense. Carter v.State, 843 So.2d 804 (Ala. 2001).
"On remand from this Court, the Court of Criminal Appeals again reversed the convictions and remanded the case for a new trial. It reversed on the ground that the verdicts were inconsistent because `the doctrine of transferred intent can[not] support a conviction for a greater offense with regard to the unintended victim than for the intended victim.' 843 So.2d at 810.
"The Court of Criminal Appeals correctly observed that Alabama appellate courts have repeatedly held that `the defendant's liability for the unintended consequences of a criminal act is in the same degree as it would have been had his aim been true and the intended target been injured or killed.'Carter, *Page 1149 843 So.2d at 810 (opinion on remand). This holding was originally justified `"[u]nder the common-law doctrine of transferred intent, [where] a defendant, who intends to kill one person but instead kills a bystander, is deemed the author of whatever kind of homicide would have been committed had he killed the intended victim.'" Carter,843 So.2d at 811, quoting Charles E. Torcia, 2 Wharton's CriminalLaw § 146 (15th ed. 1994). Section 13A-6-2(a)(1), Ala. Code 1975, reiterates the doctrine in its definition of murder. The statute provides, in pertinent part, that `[a] person commits the crime of murder if . . . [w]ith intent to cause the death of another person, he causes the death of that personor of another person. . . .' (Emphasis added.)
"The Court of Criminal Appeals interpreted the doctrine of transferred intent to mean that `[w]hen the intent was transferred from Cephas to Johnson, so too did the degree of the offense and any available defenses' and thus that `when the jury found Carter guilty of provocation manslaughter for the death of Marcus Cephas, it thereby limited Carter's culpability for the death of her friend, Artimese Johnson, to provocation manslaughter.' 843 So.2d at 811. Because, it reasoned, `the jury essentially determined that [Carter] possessed two distinct, and mutually exclusive, mental states' for one course of conduct, the Court of Criminal Appeals held that the verdicts were legally inconsistent. Id. We disagree.
"In Hammond v. State, 497 So.2d 558, 563
(Ala.Crim.App. 1986), the Court of Criminal Appeals explicitly adopted the guidelines of the United States Supreme Court inDunn v. United States, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932), concerning the review of inconsistent verdicts by an appellate court. This Court granted certiorari review, then quashed the writ. In Dunn, the Supreme Court stated:
 "`[Consistency in the verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment. . . .
 ". . . .
 "`That the verdict may have been the result of compromise, or of a mistake on the part of the jury, is possible. But verdicts cannot be upset by speculation or inquiry into such matters.'
"284 U.S. at 393-94, 52 S.Ct. 189 (citations omitted). Thus, `[t]he general rule is that there need be no rational compatibility or consistency between the verdicts on the several counts of an indictment. The exception to this rule is where the jury returns multiple convictions as to crimes which are mutually exclusive of each other.' Grikis v. State,552 So.2d 187, 187 (Ala.Crim.App. 1989).
"If the verdicts did indeed reflect that Carter possessedtwo distinct mental states regarding the killing of Cephas andJohnson, then the Court of Criminal Appeals would be correct indetermining that the verdicts are inconsistent and that thatfact requires reversal. However, the State contends, and we must agree, that the Court of Criminal Appeals has misunderstood that a conviction for provocation manslaughter implies a less culpable state of mind by the perpetrator than a conviction for intentional murder.
"Section 13A-6-3(a)(2), Ala. Code 1975, provides that a person commits provocation manslaughter if he
 "`causes the death of another person under circumstances that would constitute murder under Section 13A-6-2 [intentional murder]; except, that he *Page 1150 
causes the death due to a sudden heat of passion caused by provocation recognized by law, and before a reasonable time for the passion to cool and for reason to assert itself.'
"(Emphasis added.) Thus, when the jury finds a person guilty of provocation manslaughter, the person is deemed guilty of intentional murder ('under circumstances that would constitute murder under § 13A-6-2'), but the conviction is reduced to manslaughter because a legally recognized mitigating circumstance (provocation) has been found to exist.
"The Commentary to § 13A-6-3(a)(2) explains that `the law, recognizing the frailties of man and his loss of reason and control in certain provocative situations overlooks orforgives the "malice" and mitigates the homicide from murder to a lesser grade.' (Emphasis added.) The `malice,' or intent, is not negated, but merely forgiven because of the circumstances. As the Court of Criminal Appeals has itself observed in the past: `Heat-of-passion provocation implies that [the defendant's] actions were intentional but that, because of the circumstances, they were excused by law.' McGriff v.State, [908] So.2d [961], [1005] (Ala.Crim.App. 2000). In fact, as the Wisconsin Supreme Court has succinctly stated: `[M]any such homicides [i.e., those resulting from heat-of-passion provocation] do involve an actual intent to take the life of another. This very intent is typically the result of the heat of passion.' State v. Lee, 108 Wis.2d 1, 9, 321 N.W.2d 108, 112 (1982). In sum, provocation does not negate intent.
"Thus, the jury did not find two distinct mental states forone course of conduct: they found that Carter had the intent to kill, but that in the case of Cephas, her guilt was mitigated by the provocation brought on by his actions toward her. The intent that `transferred' was not lessened by this provocation; only Carter's guilt in the eyes of the law was lessened because of the factual circumstances. Because this is not a case where the verdicts are `mutually exclusive of each other,' Grikis, 552 So.2d at 187, a reversal is not warranted."
(Some emphasis added; footnotes omitted.)
In this case, the appellant's five convictions arose from the automobile accident in which Eria Jackson, Lisa Cartwright, Pamela Cartwright, and Samyrin Cartwright were killed and Jaleesa Cartwright was injured, and all five of the victims were in the same vehicle at the time of the accident. Therefore, all five convictions were based on one course of conduct and one set of circumstances.
Also, by finding the appellant guilty of second-degree assault, the jury found that the appellant had acted recklessly with regard to the injuries sustained by Jaleesa. However, it found that he had acted only with criminal negligence with regard to the deaths of Eria Jackson, Lisa Cartwright, Pamela Cartwright, and Samyrin Cartwright. Therefore, the jury found two distinct degrees of culpability for one course of conduct that arose from one set of circumstances, and the verdicts in case numbers CC-05-4898, CC-05-4899, CC-05-4900, and CC-05-4901 were inconsistent with the verdict in case number CC-05-4902.Cf. Carter, supra. Consequently, the appellant's second-degree assault conviction must be reversed.
However, the trial court instructed the jury on the lesser included offense of third-degree assault pursuant to § 13A-6-22(a)(3), Ala. Code 1975, and the jury found that the appellant had acted with criminal negligence in case numbers *Page 1151 
CC-05-4898, CC-05-4899, CC-05-4900, and CC-05-1901. Also, the evidence presented during the trial clearly supported a conviction for the lesser included offense of third-degree assault. "Appellate courts have the `inherent authority to reverse a conviction while at the same time ordering an entry of judgment on a lesser included offense.' Edwards v.State, 452 So.2d 506, 507 (Ala.Crim.App. 1983),aff'd, 452 So.2d 508 (Ala. 1984)." Campbell v.State, 555 So.2d 252, 254 (Ala.Crim.App. 1989). Accordingly, we remand this case to the trial court with instructions that it enter a judgment of guilty of the lesser included offense of third-degree assault and impose a sentence for that offense.
For the above-stated reasons, we affirm the appellant's convictions and sentences for criminally negligent homicide in case numbers CC-05-4898, CC-05-4899, CC-05-4900, and CC-05-4901. However, we reverse the appellant's conviction for second-degree assault in case number CC-05-4902 and remand the case to the trial court with instructions that it enter a judgment of guilty of the lesser included offense of third-degree assault and impose a sentence for that offense. The trial court shall take all necessary action to see that the circuit clerk makes due return to this court at the earliest possible time and within 28 days after the release of this opinion. The return to remand shall include a transcript of the remand proceedings conducted by the trial court.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
McMILLAN, P.J., and COBB and WISE, JJ., concur; SHAW, J., concurs specially, with opinion.
SHAW, Judge, concurring specially.
I concur. I write specially only to point out that this case is materially distinguishable from Hammonds v. State, [Ms. CR-04-1699, April 28, 2006] "So.2d (Ala.Crim.App. 2006), in which I concurred in part and dissented in part, and which the parties cite in their "Joint Stipulation of Undisputed Facts." Under the circumstances presented in Hammonds, the jury's verdicts may have reflected conflicting and irreconcilable findings of fact; however, they did notnecessarily reflect conflicting and irreconcilable findings. As I stated in my special writing inHammonds, verdicts should not be upset by speculation or inquiry as to whether they may have been the result of mistake or compromise. The verdicts in Hammonds were logically reconcilable.
In the present case, it seems clear to me that the jury returned multiple verdicts as to crimes (i.e., criminally negligent homicide and second-degree assault) that are mutually exclusive. To me, the verdicts here cannot be logically reconciled, in light of the jury's apparent finding that the appellant possessed two distinct mental states with respect to the deaths of Eria Jeanyne Jackson, Lisa Cartwright, Pamela Cartwright, and Samyrin Cartwright, on the one hand, and the injuries sustained by Jaleesa Cartwright, on the other.
 On Return to Remand
BASCHAB, Presiding Judge.
In an opinion that was released on December 20, 2006, we concluded that the jury's verdicts finding the appellant, Rufo Ruiz Martinez, guilty of criminally negligent homicide in case numbers CC-05-4898, CC-0-899, CC-0-4900, and CC-05-4901 were inconsistent with the verdict finding him guilty of second-degree assault in case number CC-05-4902 and that the conviction for second-degree assault in case number CC-05-4902 could not stand. Therefore, we affirmed the appellant's convictions and sentences in case numbers *Page 1152 
CC-0-4898, CC-05-4899, CC-05-4900, and CC-05-4901. However, we reversed his conviction in case number CC-05-4902 and remanded the case to the trial court with instructions that it enter a judgment of guilty of the lesser included offense of third-degree assault and impose a sentence for that offense.
While this case was on remand to the trial court, the Alabama Supreme Court released its decision in Heard v. State, [Ms. 1041265, January 12, 2007]___ So.2d ___(Ala. 2007). InHeard, the Alabama Supreme Court attempted to clarify the difference between inconsistent verdicts and mutually exclusive verdicts. Specifically, the supreme court stated:
 "[M]utually exclusive verdicts are the result of two positive findings of fact that cannot logically coexist. In other words, it is legally impossible for the State to prove the elements of both crimes. In order to determine whether the guilty verdicts are mutually exclusive as a matter of law, the alleged underlying offenses or acts must be carefully scrutinized. The two guilty verdicts are not mutually exclusive if no element of one crime necessarily negates an element of the other.
 "Mutually exclusive verdicts exist when a guilty verdict on one count logically excludes a guilty verdict on another count. In contrast, inconsistent verdicts can exist where there is a verdict of guilty and another of not guilty, as when there are two guilty verdicts that are not mutually exclusive. Inconsistent criminal verdicts are permissible; mutually exclusive verdicts are not."
Heard, ___ So.2d at ___.
In this case, we held that, because the jury found two distinct degrees of culpability for one course of conduct that arose from one set of circumstances, the verdicts in case numbers CC-05-4898, CC-05-4899, CC-05-4900, and CC-05-4901 were inconsistent with the verdict in case number CC-05-4902. The language we used in our original opinion regarding inconsistent verdicts and mutually exclusive verdicts may not be entirely consistent with Heard. However, based onHeard we conclude that we ultimately reached the correct result because this case involved two positive findings of fact that cannot logically coexist. Specifically, the jury found that the appellant acted negligently in case numbers CC-0-4898, CC-0-4899, CC-05-4900, and CC-05-4901, but recklessly in case number CC-05-4902. One single act cannot be both negligent and reckless. Therefore, the jury's verdicts in case numbers CC-0-4898, CC-0-4899, CC-05-4900, and CC-05-4901 and in case number CC-05-4902 were mutually exclusive. SeeHeard. Accordingly, we correctly concluded that the appellant's conviction for second-degree assault in case number CC-05-4902 could not stand.
On remand, the trial court entered a judgment of guilty on the lesser included offense of third-degree assault in case number CC-05-4902 and sentenced the appellant to serve a term of twelve months in the Madison County Jail. Because the trial court has complied with our instructions, we affirm that court's judgment.
AFFIRMED.
McMILLAN, WISE, and WELCH, JJ., concur; SHAW, J., concurs specially, with opinion.
SHAW, Judge, concurring specially.
I concur to affirm the trial court's judgment on return to remand. I write only to make one observation.
In its recent decision in Heard v. State, [Ms. 1041265, January 12, 2007] ___ So.2d ___ (Ala. 2007), after noting that it found *Page 1153 
certain Georgia cases persuasive with respect to the law governing mutually exclusive verdicts, the Alabama Supreme Court, quoting Jackson v. State, 276 Ga. 408,577 S.E.2d 570 (2003), stated:
 "`If the judge did not send the jury back to resolve its mutually exclusive verdicts before the jurors were dismissed, the Georgia Supreme Court, citing Thomas [v. State, 199 Ga.App. 586, 405 S.E.2d 512 (1991), rev'd on other grounds, 261 Ga. 854, 413 S.E.2d 196 (1992)], and Dumas [v. State, 266 Ga. 797, 471 S.E.2d 508 (1996)], held:
 "`"[W]here there are mutually exclusive convictions, it is insufficient for an appellate court merely to set aside the lesser verdict, because to do so is to speculate about what the jury might have done if properly instructed, and to usurp the functions of both the jury and the trial court." (Footnote omitted) [Dumas, 266 Ga. at 799, 471 S.E.2d at 511]. Thus, where, as here, it was both legally and logically impossible to convict Jackson of both felony murder and involuntary manslaughter, we must reverse both mutually exclusive convictions and order a new trial.'
 "Jackson, 276 Ga. at 413, 577 S.E.2d at 575
(citations omitted)."
___ So.2d at ___. This language strongly suggests, without specifically holding, that a new trial is the proper remedy where the verdicts rendered are mutually exclusive. However, inEx parte Dorsey, 881 So.2d 533 (Ala. 2003), the Supreme Court did not order a new trial after finding mutually exclusive verdicts, and the Supreme Court in Heard
overruled Dorsey only "to the extent Dorsey
conflicts with the rationale in the present case that verdicts finding the defendant guilty of felony murder and capital murder are not mutually exclusive. . . ."___ So.2d at ___.
I urge the Supreme Court to clarify at its earliest opportunity whether its holding in Heard prohibits the kind of remedy this Court fashioned in the present case — reversal of the second-degree-assault conviction with instructions for the trial court on remand to enter a judgment of guilty of the lesser-included offense of third-degree assault and to impose a sentence for that offense. Based on the particular circumstances of this case, and without a clear directive from the Supreme Court to the contrary, I see no need for this Court to grant broader relief than that requested by the appellant.